## J. H. Wade v. The State.

No. 5572.   Decided January 14, 1920.

Rehearing denied January 26, 1921.

### 1.—Murder—Provoking the Difficulty—Charge of Court.

Where, upon appeal from a conviction of murder, in which the court below charged on murder, manslaughter, and self-defense, and the evidence raised the issue of murder, and provoking the difficulty, the contention that, as a matter of law, the issue of murder was not raised by the evidence, was not well taken.   Following Cornelius v. State, 54 Texas Crim. Rep., 186; besides, there was no charge on provoking the difficulty.

### 2.—Same—Declarations by Deceased—Withdrawal of Illegal Testimony.

Where, upon trial of murder, the evidence showed that the deceased was shot at close range and that at least four buck shot penetrated his head, and the facts were such as to exclude his consciousness at the time his wife reached him, and asked him whether he was ready to go, (die), which he answered affirmatively, and besides such testimony in any event would have been inadmissible even if declarant had been conscious, the same was reversible error, although it was withdrawn sometime thereafter on motion of the State.   Following Rice v. State, 51 Texas Crim. Rep., 280, and other cases.

### 3.—Same—Declarations of Deceased—Rule Stated.

Unable to be assured that the error of admitting said declaration by the deceased as harmless, conscious that it may have been hurtful to him, and sure that the admission of the evidence was illegal, the court conceives it its duty to accord the appellant another trial, and the judgment is reversed and the cause remanded.

### 4.—Same—Evidence—Bill of Exceptions.

Where, the State had offered no proof relating to what the remarks the deceased made to his wife were, and the defendant, in his cross-examination of her admonished her that she must not disclose the remarks, there was no merit in the bill presented by the defendant.

Appeal from the District Court of Williamson.   Tried below before the Honorable James R. Hamilton.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. F. Taulbee,* and *White, Cartledge & Wilcox,* for appellant.—On question of admitting declarations of deceased: Barth v. State, 46 S. W. Rep., 231; Haney v. State, 122 S. W. Rep., 35; Collins v. State, 171 id., 729; McCandless v. State, 57 S. W. Rep., 672; Clements v. State, 134 id., 728; Kemper v. State, 138 id., 1030; Darnell v. State, 126 id., 1122; Welhausen v. State, 18 id., 300.

*Critz, Lawhon & McNair* and *Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of declarations of deceased: Brunet v. State, 12 Texas Crim. App., 521; Lindsey v. State, 35 Texas Crim. Rep., 164; Roberts v. State, 168 S. W. Rep., 100; Simpson v. State, 154 S. W. Rep., 999; Wilson v. State, 49 Texas Crim. Rep., 56.

MORROW, JUDGE.—Appellant stands condemned to confinement in the penitentiary for the period of 5 years for murder. He and deceased were neighbors, a division fence separating their farms. A reversal is sought upon the ground that the evidence does not justify a verdict of murder.

On Friday evening, immediately preceding the Tuesday on which the homicide occurred, an altercation took place in which the deceased and appellant were parties. A statement of the details is unnecessary, but from the State's testimony offered, the deceased applied an insulting epithet to the son of appellant, shortly thereafter expressing his regrets for having done so to the appellant. In the course of the affair appellant's son threw rocks at the deceased, and the deceased drew his knife.

The homicide took place at the next meeting. This meeting occurred under the following circumstances. The appellant put some posts in his wagon, also his shotgun, and he and his son went to the division fence with the intention of making some repairs or changes in it. The deceased, who was at his house some 500 yards distant from the fence, observing the approach of appellant desisted from loading his wagon with cotton, and came to the fence accompanied by his two sons. When the deceased reached a point near the fence a wordy altercation took place in which the deceased claiming that the fence belonged to him and that the appellant had no interest in it, demanded that appellant should desist from interference with it. Appellant assumed a contrary position, expressed his intention to proceed with his work, and, according to the State's testimony, while the deceased was standing on his own land some six feet from the fence, the appellant called him a son-of-a-bitch, and reached in his wagon for his gun; that up to this time the deceased had made no demonstration, but when this occurred he picked up a rock of considerable size and hurled it at the appellant, who at the time was some thirty-six feet distant. The appellant immediately threw up his gun and fired one shot, four buckshot from the gun striking the deceased in the head and causing him to fall at once and shortly thereafter to die.

374 88 Texas Criminal Reports. [*January,*]

The evidence coming from the appellant and his son was to the effect that after throwing the rock at the appellant the deceased approached him; that the appellant warned him to stop when the deceased called the appellant a son-of-a-bitch, and reached under his coat, apparently after a gun. Appellant claimed to have been more or less disabled by some ailment in his back, and that on Sunday preceding the homicide he had seen the deceased walking along the division fence, and on the following Monday had seen him cutting vines which were near it, and that he, the appellant, went to the fence for the purpose of cutting the vines from his side of the fence and making repairs upon it, and that he armed himself because the deceased had on the occasion of the previous difficulty threatened his life; that immediately before the shot was fired the deceased, responding to the appellant's warning to stop, had said: "I will kill you, you son-of-a-bitch;" and that the shot was fired because the appellant believed the deceased was going to shoot him, and not because the rock was thrown nor because of deceased's insulting language; that if the deceased had not approached him in a threatening manner with his hand under his coat, the shot would not have been fired.

The appellant was 48 years of age and bore a good reputation. The deceased and his sons who were with him were unarmed, there was some conflict as to the exact position of the parties and touching the conduct of the appellant thereafter with reference to his attitude towards the sons of the deceased in forbidding them to go to their father after he was shot, and his conversation with the daughter of the deceased who arrived after her father was wounded.

The court submitted the issues to the jury in a charge to which there was no exception taken, and which we regard as a fair, unusually accurate, and full instruction to the jury upon the law of murder, manslaughter, and self-defense, carefully protecting the rights of the appellant under the rules relating to the burden of the proof and the presumption of innocence. We are asked to say that as a matter of law the issue of murder was not raised by the evidence. This we are unable to do. From the State's evidence the jury might have fairly deduced the inference that the appellant acted upon malice engendered by the ill-feeling of the parties and the previous difficulty, and that anticipating the meeting with the deceased he armed himself with a shotgun loaded with buckshot, and that he applied to the deceased an epithet, which, while not justifying an assault upon him by the deceased under our statutes which declare insulting words insufficient to justify an assault, was reasonably calculated to cause the deceased to make an assault or demonstration against the appellant. Appellant's use of the insulting words was both wrongful and unlawful, and the jury may have concluded that it was intended to produce the occasion for slaying the deceased. See Cornelius v. State, 54 Texas Crim. Rep., 186, in which it is said that any words "that are calculated to provoke and do provoke a difficulty, and are so intended, will be and are a

basis for a charge on provoking the difficulty." In the instant case there was no such charge. This was favorable to the appellant. Under the charge given the jury were authorized to accept his theory of self-defense, to mitigate the homicide to the grade of manslaughter, or find that it was inspired by malice. These issues were all presented by the evidence in the case, and the jury's conclusion that the appellant was guilty of murder and that his punishment should be assessed at confinement in the penitentiary for five years is, in our opinion, well supported by the proof.

The wife of deceased testified that when she reached her husband she asked him if he was called on was he ready to go; and he said "Yes." The court states in qualifying the bill that the jury were instructed not to consider the testimony for any purpose. The bill does not disclose exactly when this took place, but the inference is left that the evidence was withdrawn immediately after the time the next witness testified. It appeared from the testimony of the doctor that the deceased was unconscious, and we think the same reasonably appeared from the testimony of his wife; and in our opinion the evidence should not have been admitted. In view of its prompt withdrawal and the fact that the jury assessed the lowest punishment for the offense of which they found the appellant guilty, we do not regard its admission as an error which would authorize us to reverse the judgment.

The wife of deceased said that before going to the scene of the homicide the deceased made some remarks to her. The appellant on cross-examination asked her if she did not try to keep her husband from going there. This was objected to as a conclusion, the court stating that the witness might state the facts, the State's attorney stating at the time that he made no objection to her relating the facts as to all that was said and done by her and her husband. The State had offered no proof relating to what the remarks her husband made to her were, and the appellant in his cross-examination of her admonished her that she must not disclose the remarks. We think there is no merit in the bill.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 2, 1920.

MORROW, JUDGE.—After stating that the deceased seemed rational when a question was propounded to him, his wife was permitted to state: "I asked him if he was called on was he ready to go, and he said he was." A prompt objection was addressed to this evidence, and was overruled by the court. When stating in the original opinion that the evidence was promptly withdrawn, we mistook the record. From

one of the bills on the subject it appears that it was withdrawn at the request of State's counsel after the State had rested its case. We assumed from the qualification of the bill—to the effect that it was withdrawn after the doctor testified—that the conclusion was reached that the element of consciousness was not sustained in the predicate, the doctor having given testimony indicating that the brain was paralyzed by the wound, and that the deceased was not conscious. The evidence in question was irrelevant upon any incident of the homicide, or the cause of the death. The deceased was shot at close range, at least four buck shots penetrating his head, and we think the evidence was such as to exclude his consciousness at the time his wife reached him. We believe we were in error in holding the admission harmless. It could have been used for no legitimate purpose; it may have been given an effect prejudicial to the appellant's case.

The testimony relating to the incidents immediately connected with the homicide was conflicting. From the defensive testimony, the deceased a few days before he was killed had in his words and conduct been aggressive, abusive, and threatening towards his neighbor, the appellant, and that the fatal shot was fired while the deceased was engaged in a hostile demonstration, and making use of vile language towards the appellant. We conceive of no application the jury could have made of the evidence complained of other than to have drawn the inference therefrom favorable to the blameless life of the deceased, and the innocent character of his conduct at the time he was killed. It was in a class of evidence which has frequently been held inadmissible, and at times cause for reversal. In Rice's case, 51 Texas Crim. Rep., 280, the court said: " 'to meet him in heaven, not to hurt anybody, and that he forgave the man who shot him' was certainly not evidence to which deceased or any other witness could have testified, and was of a character calculated to prove exceedingly hurtful to the appellant."

In Wilson's case, 49 Texas Crim. Rep., 56, the declaration excluded was: "What will become of my poor wife and children?" In Drake's case, 65 Texas Crim. Rep., 282, 143 S. W. Rep., the deceased said: "Tell my mother I am going to die like a man, and that a coward shot me." In Hayes' case, 73 Texas Crim. Rep., 58, 164 S. W. Rep., the declaration to his wife that he had made ample provision for her, had done the best he could, was held of a harmful nature. So in Jackson's case, 63 Texas Crim. Rep., 358, Judge PRENDERGRAST, writing the opinion, said: "Objection was made to the introduction, especially of the fact that she had kissed him when she first or soon after she reached him, then he requested her to kiss him good-bye, which she did. . . . This would have a tendency to prejudice the rights of the appellant, stir the emotions of the jury against him, and influence their minds."

The issues were sharply drawn and the evidence conflicting. To what degree, if at all, the improper testimony impressed the jury, is a

matter of conjecture only. We are certain it should not have been given to them; it is obvious that they may have used it; it is clear that they could have used it for none but an improper purpose, one conflicting with the appellant's theory and prejudicial to his case. The effect of the attempted withdrawal is equally dubious, and delay in making the effort accentuates the difficulty. Welhousen v. State, 30 Texas Crim. App., 623, 18 S. W. Rep., 30; Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W. Rep., 1030; Clements v. State, 61 Texas Crim. Rep., 161, 138 S. W. Rep., 728; McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Haney v. State, 57 Texas Crim. Rep., 158, 122 S. W. Rep., 35; Barth v. State, 39 Texas Crim. Rep., 399, 46 S. W. Rep., 231; Branch Ann. Texas, P. C., Sec. 383; Wharton Cr. Ev., Vol. 1, p., 530.

Unable to be assured that the error was harmless, conscious that it may have been hurtful, and sure that the admission of the evidence was illegal, we conceive it our duty to accord the appellant another trial. The motion for rehearing is therefore granted, the affirmance set aside, and the judgment now ordered reversed and the cause remanded.

*Reversed and remanded.*

[Motion for rehearing overruled January 26, 1921.]