### WILLIAM MEADOR v. THE STATE.

No. 89534.   Delivered May 12, 1926.

Rehearing withdrawn January 12, 1927.

**1.—Murder—Change of Venue—Transferring Papers—No Error Shown.**

Where appellant was jointly indicted for murder with one Andy Meador, was tried in Ward County and convicted, and appealed his case, and pending his appeal, the case against his co-defendant was transferred on a change of venue to Tom Green County, and the original indictment and other court papers sent to Tom Green County. After the reversal of his case on appeal it was transferred on a change of venue to Nolan County and he was then placed on trial, and the clerk of Tom Green County sent the indictment and other papers back to the clerk of Nolan County. There was no irregularity in this procedure.

**2.—Same—Continued.**

The original indictment was present and on file in the county of his trial. Where it had been, and whether it came with the other papers or otherwise, in no way affected any right of the appellant. The order changing the venue from Ward County to Nolan County was regular, and it was not material that the indictment should have been in Ward County when the order changing the venue to Nolan County was made. See Rothschild v. State, 7 Tex. Crim. App. 19, and Littleton v. State, 91 Tex. Crim. Rep. 207. Distinguishing Hollingsworth v. State, 221 S. W. 978.

**3.—Same—Evidence—Properly Admitted.**

Where the wife of deceased was admittedly involved in the difficulty with appellant and her husband, which resulted in his death, and had so testified, there was no error in permitting a physician to testify that he

examined the wife on the same evening of the killing and to describe the condition of certain wounds and bruises found on her body.

### 4.—Same—Evidence—Res Gestae—Properly Admitted.

Where a witness testified for the state that he was on horseback about four hundred yards from the scene of the homicide, and heard a gun fired, and ran his horse to the place of the killing, there was no error in permitting this witness to detail what was said and done by the appellant, his father, and the wife of deceased, upon his arrival, and that deceased's wife then said, "They tied him, and murdered him." This testimony was admissible as a part of the res gestae. See Craig v. State, 30 Tex. Crim. Ann. 621; Connell v. State, 45 Tex. Crim. Rep. 261.

### 5.—Same—Evidence—Properly Admitted.

Where a witness for the state was permitted to testify that on his arrival at the scene of the homicide, appellant and his father started to attack the wife of the deceased, and that witness picked up a gun and told appellant and his father to stand back. This testimony, on objection by appellant, was withdrawn by the court, and appellant reserved a bill to its admission. It was clearly admissible as a part of the res gestae, and should not have been withdrawn from the jury. Distinguishing Deckard v. State, 225 S. W. 166, and Wade v. State, 227 S. W. 489. Following Parr v. State, 36 Tex. Crim. Rep. 493.

### 6.—Same—Evidence—Properly Admitted.

Where it was undisputed that appellant and his father tied the deceased with a rope before he was killed, there was no error in permitting a witness who saw deceased after his death to demonstrate the manner in which he was tied with the rope, by tying a rope, in the presence of the jury, around the District Attorney. This was an occular demonstration of just what the witness saw and testified about. Distinguishing Clark v. State, 38 Tex. Crim. Rep. 30, and Faulkner v. State, 65 S. W. 1096.

### 7.—Same—Charge of Court—Held Correct.

Appellant's criticisms of the court's charge, in his failure to submit the defensive theory that appellant did not kill the deceased with a gun, but by striking him on the head with a pair of pliers, is without merit, although the evidence did disclose that appellant beat the deceased over the head with a pair of pliers. Appellant himself testified that he then "fired and killed him."

### 8.—Same—Continued.

It is said in Sec. 139, Vol. 1, of Greenleaf on Evidence, that "An offender may not apportion his own wrong, and even though one be suffering from a mortal disease, if death be hastened by the malicious hurt of the accused, he will be guilty of murder." See also Williams v. State, 2 Tex. Crim. App. 282; Garner v. State, 45 Tex. Crim. Rep. 310, and Duque v. State, 56 Tex. Crim. Rep. 214.

### 9.—Same—Charge of Court—On Manslaughter—Held Sufficient.

Where the court correctly defined manslaughter and adequate cause, and submitted the issue affirmatively, and there were no facts shown presenting the issue of specific acts or conduct on the part of deceased, this

charge was sufficient. Charges which go beyond this where there are no facts in evidence calling for more specific presentments, should not be given, and but multiply issues to the confusion of the jury. Distinguishing Hatchcock v. State, 263 S. W. 587.

### ON REHEARING.

#### 10.—Same—Motion Withdrawn.

Appellant now files his affidavit advising the court that he desires to withdraw his motion for rehearing. His request is granted and mandate is ordered issued upon the original opinion.

Appeal from the District Court of Nolan County. Tried below before the Hon. W. P. Leslie, Judge.

Appeal from a conviction of murder, penalty ten years in the penitentiary.

This is the second appeal of this case. The first appeal is reported in 253 S. W. 297.

*Beale, Beale & Beale, G. E. Lockhart,* and *Williams, Williams, McClellan & Lincoln,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Nolan County of murder; punishment, ten years in the penitentiary.

This case originated by indictment returned at a special term of the District Court of Andrews County. Said indictment charged appellant and Andy Meador with the murder of Rawls. Venue was changed to Ward County, where, upon request and agreement, a severance was ordered and this appellant put first upon trial. He was convicted, appealed, and the judgment was reversed June 13, 1923. (See 253 S. W. Rep. 297.) While this appeal was pending the venue of the case against Andy Meador was changed from Ward to Glasscock County and the papers in the case, including the indictment, were sent to the clerk of the District Court of Glasscock County. In August, 1922, the venue of the case against Andy Meador was changed from Glasscock County to Tom Green County, and the papers in said case, including said indictment, were sent to the district clerk of Tom Green County. After the reversal of the case against this appellant in June, 1923, and on to-wit, July 16, 1923, by proper order of the District Court of Ward County, the venue of his case was transferred to Nolan County, where this trial took place. Upon receipt of the transcript from Ward County

by the clerk of the court of Nolan County, it was discovered that the original indictment was not among the papers. Thereupon a letter was sent to the clerk of the District Court of Tom Green County, where the case against Andy Meador was pending on said joint indictment, asking that said clerk mail to the District Attorney at Sweetwater, in Nolan County, the original indictment herein. He mailed same to the district clerk in Nolan County.

When this case was called for trial appellant plead to the jurisdiction of Nolan County District Court for various reasons relating to defective orders of transfer from the counties above named, and also objected to the use of the indictment herein because it had been sent, as he claimed, irregularly from the district clerk of Tom Green County to the district clerk of Nolan County. He also asserted that because of the absence of the indictment from Ward County at the time this case was transferred to Nolan County, that the transfer was a nullity. His pleas to the jurisdiction are in bills of exception Nos. 1 and 1½, and he also presents some twelve bills complaining of the admission of the oral testimony of the clerks of the several counties and other officials who gave testimony as to the manner and time of the transfers above referred to, and who identified the indictment used on this trial as the original indictment returned against appellant and Andy Meador in Andrews County. These matters are considered together in appellant's brief and will be so treated here.

There is no question but that appellant was tried on the original indictment returned against him. There had been no attempt to substitute the indictment, and we are unable to apply the authorities cited in appellant's brief. Nor are we able to follow him in his argument that at every step or each stage of the progress of a case through the courts, the indictment must be "present and used." The joinder of A and B as defendants in one indictment, and that when so indicted they have a right to sever, is statutory. See Arts. 726-727, Vernon's C. C. P. That the case of each thereafter becomes a separate, distinct legal entity is obvious, and this fact, if kept in mind, would probably enable us to steer clear of some confusion. If after severance A be tried and convicted and appeal his case, it would be wholly without reason to say that B must remain untried until A's appeal be disposed of. Krebs v. State, 8 Tex. Crim. App. 26. If conditions existed in the county of A's trial which would entitle B to a change of venue from W County, wherein B's trial was had, and where apparently jurisdiction of his case

must remain until his appeal has been decided, can it be tolerated for a moment that B could not obtain the change of venue to which the constitution and statutes entitle him, forsooth, because the indictment was joint and could not both accompany his case on change of venue and remain in the county where A awaits the decision of his appeal? If B is granted his change of venue and the indictment accompanies the papers in the case to G County, and thereafter A's case be reversed by the appellate court,—according to appellant's argument the court of W. County would be helpless to take further steps in A's case because, forsooth, the indictment had been sent to G County with B's case on change of venue. We cannot assent to this proposition. The statutes lay down for the guidance of officers directions as to official duties, but these are not to be so used as to cripple or hinder the substantial power of the courts to function. The only questions here raised pertinent to this appellant's case are whether the District Court of Ward County was without authority to change the venue in his case at a time when the joint indictment was legally in Tom Green County, where Andy Meador's case was pending, and whether the indictment could properly get from Tom Green County to Nolan County by being sent through the mails by one clerk to the other.

It was said in Rothchilds v. State, 7 Tex. Crim. App. 19:

"We do not regard the proceedings on an application for a change of venue as any part of the trial, and in support of this position need not invoke any other authority than our own Code of Criminal Procedure, the wisdom and comprehensive character of which stands a fitting monument of the greatness of its original author."

In that case the accused was in jail and not present when the venue was changed, and this court held that his personal presence was not necessary, notwithstanding the general rule that the accused must be present at all proceedings had in his trial. See also Littleton v. State, 91 Tex. Crim. Rep. 207, and authorities cited. The principle in these cases is the same as that in the case at bar. The presence of the indictment, when a change of venue is ordered, is no more imperative than the presence of the accused. If the change of venue is not part of the trial in the one case, it is not in any instance. In this connection we observe that in Hollingsworth case, 221 S. W. 978, cited by appellant, we had before us the question of the power of the court, to which a case had been transferred on change of venue, to substitute an indictment which had been lost before the venue was changed—and what we there said

was applicable to those facts and has no reference to a case such as is now before us. Referring to the power of the court to which the venue had been changed, it is stated in said opinion: "Its jurisdiction not having attached except by virtue of the transfer, it would have no authority to substitute *or to file original papers that necessarily arose or were filed in the county from which the transfer was based.*" The italicized part of this is cited by appellant as authority for his contention that the indictment herein not being with the papers accompanying the transcript, could not be thereafter filed in Nolan County. Inasmuch as the original indictment in ordinary cases accompanies the transcript on change of venue, and is filed in the court in which it goes, it is clear that we had in mind no question relating to the filing of same in what we said in the opinion in Hollingsworth case, supra. In fact, said opinion states, with reference to the original indictment, if not lost but not sent with the transcript to Bosque County, to which the venue had been changed, the judge of the Bosque County court, "if it had not been lost, could have required the clerk to forward the original." It would certainly seem reasonable that if, after sending the other papers, the clerk had discovered that he had failed to send the original indictment with the transcript, he might then forward same by any proper channel to the clerk of the court to which the venue had been changed without being compelled to get an order from the court again directing him to send merely the indictment. We think the clerk of the court to which the venue is changed and to which the indictment is sent, may not refuse to file it because it did not come with the other papers. We would not so magnify the shadow and destroy the substance of directory statutes as to so hold. The objections to the proof orally made by various officers mentioned seem to call for no discussion. The original indictment was present and on file in the county of his trial. Where it had been and whether it came with the other papers or otherwise in no way affected any right of the appellant. The order changing the venue from Ward County to Nolan County seems to have been properly made and we do not deem the fact that the indictment was then on file in Tom Green County to deprive the District Judge of Ward County of his power to make the order changing the venue. Attention of district attorneys is called to the fact that separate indictments would obviate the difficulties here discussed.

Objection was made by appellant to the testimony of a Dr. Curtis. The wife of deceased seems admittedly a party to the transaction or combat between herself and husband on the one

side and appellant and his father on the other, which ended in this homicide. Dr. Curtis testified that he was called to see Mrs. Rawls the same evening of the killing, and was allowed to describe the condition of certain wounds and bruises found on her body. Nothing in the bill of exceptions presenting complaint of this testimony shows that it was not usable to corroborate the wife's story as to the nature, character and extent of the difficulty which differed materially from the testimony of the appellant relating to the same facts. She claimed that appellant and his father assaulted her and her husband and that she was badly beaten up as a result.

A Mr. Thornberry testified for the state that he was on horseback about four hundred yards from the scene of the homicide, heard a gun fire and ran his horse to the place of the killing. He detailed what was said and done by the parties, viz., appellant, his father and the wife of the deceased, upon his arrival at the scene. We think what was then said and done was res gestae of the homicide. Craig v. State, 30 Tex. Crim. App. 621. The statement of Mrs. Rawls that "They tied him and murdered him," was admissible as part of the res gestae, and was not seriously objectionable because of the language used. Connell v. State, 46 Tex. Crim. Rep. 261.

In telling what occurred at said time and place and that appellant and his father started to attack the woman, appellant threatening to kill her also, the witness Thornberry told of the fact that he picked up a gun and told appellant and his father to step back, when they started apparently to attack the woman. This was objected to, the jury was retired, and after hearing the matter fully and upon return of the jury, the trial court instructed them not to consider what was said and done by witness in picking up the gun and telling appellant and his father to step back. Notwithstanding this action of the court, appellant reserved his bill of exceptions and insists that the evidence was of such injurious character as that it could not be removed by the instruction. We do not agree with appellant's contention in this regard, and think the cases of Deckerd v. State, 225 S. W. 166; Wade v. State, 227 S. W. 489, and the other authorities cited by appellant, are not upon facts which have analogy here. If the court had not withdrawn the testimony himself, we would hesitate to hold the evidence incompetent. A very short time elapsed after the shooting until Thornberry did and said what was objected to. It took place at once upon his arrival at the scene. Appellant and his father were threatening a further attack on Mrs. Rawls, which seemed

only prevented by what Thornberry did and said. If the acts and declarations of the principal actors at this time were res gestae of the homicide, and if the acts and declarations of Thornberry would serve to illustrate and make plain the feelings, motives and acts of such principal actors, same might well be deemed pertinent. Parr v. State, 36 Tex. Crim. Rep. 493; Faulkner v. State, 43 Tex. Crim. Rep. 325; Clements v. State, 61 Tex. Crim. Rep. 161.

All parties admitted that deceased was tied by appellant before the homicide. The state contended that when he was shot and killed he was still tied. Appellant disputed this and claimed that deceased got loose and attacked appellant's father before the shooting. Witness Thornberry testified that he examined the body of deceased shortly after the killing and that a rope was tied around it in what he called a figure eight knot. He affirmed that he remembered just how the same was tied and was permitted to give a demonstration before the jury by tying a rope around the body of the district attorney in what he said was exactly the same fashion as the rope that was tied around the body of the deceased. We think the matter not incompetent under the rule in Clark v. State, 38 Tex. Crim. Rep. 30, and that Faulkner v. State, 65 S. W. 1096, is not authority for rejecting said testimony. Of what was done in the Faulkner case, supra, we said that it was not an experiment and not a transaction testified to by any witness, but was wholly a spectacular exhibition before the jury. In the transaction under discussion the jury was given an ocular demonstration of exactly what the witness saw and testified about. The three bills of exception complaining of this are without merit.

In paragraph 7 of the charge the jury were told that they must believe from the evidence beyond a reasonable doubt that appellant "did then and there unlawfully with malice aforethought shoot with a gun and thereby kill Asa Rawls, as charged in the indictment." This was excepted to, among other reasons, on the ground that "the court has so mingled its charge and its verbiage and arrangement on what is unlawful, what is malicious, and as to whether the act was done in the way alleged in the indictment that it is confusing to the jury and pass the understanding of the ordinary jury, and that the evidence raised an issue with respect to all of the things just above mentioned. And because the court fails to affirmatively instruct the jury to acquit if the deceased was killed under circumstances justified under the law of self-defense or not in the manner charged in the indictment." The proposition is advanced in appellant's

brief that the evidence raised a defensive theory to the effect that deceased was not killed by being shot with a gun, and that this exception was specific enough to call the court's attention to the need for an affirmative charge on this theory. There is not a word in appellant's testimony claiming that he killed deceased with anything except a gun. In fact, he swore that after striking deceased with a pair of pliers to make him turn loose appellant's father, without success, deceased took the pliers away from him and started to hit his father with same, "and that is the first time the thought entered my mind to kill him," and that he picked up the gun and "fired and killed him." The wife of deceased swore that after beating her husband over the head with the pliers, and as she thought knocking him unconscious, appellant shot him. The proof showed that the shot entered the neck below the ear with an upward range, going, as one witness said, probably into the brain. In Sec. 139, Vol. 1, of his work on Evidence, Mr. Greenleaf says that an offender may not apportion his own wrong, and that even though one be suffering from a mortal disease, if his death be hastened by the malicious hurt of the accused, he will be held guilty of murder. See Williams v. State, 2 Tex. Crim. App. 282; Garner v. State, 45 Tex. Crim. Rep. 310; Duque v. State, 56 Tex. Crim. Rep. 214. There was no confusion or lack of clarity in the court's charge in submitting the issue as to how the killing was done. In our opinion the facts called for no affirmative charge submitting the theory that death resulted from some cause other than the gunshot wound.

Complaint is made of the charge on manslaughter. The court defined manslaughter correctly, also adequate cause, and told the jury that an assault and battery causing pain and bloodshed is in law deemed adequate cause; also that any condition or circumstance, or combination of circumstances, etc., capable of creating in the mind of a person of ordinary temper, and which in fact did create in the mind of the defendant such passion, etc., would be adequate cause; and he then told the jury that if appellant killed, but at the time his mind was in such condition of passion, etc., from some adequate cause, he would be guilty of no more than manslaughter. We are at a loss to know under the facts of this case how the court could have given a charge more applicable to the facts. Appellant did not claim that he assaulted or shot deceased because of any assault on him, but because of an assault on his father and in defense of his father. True, the wife of deceased said that in the melee she bit appellant in the arm and appellant swore that he was

much excited. He does not seem to have paid any attention to the bite of the deceased's wife, if it was in fact true. There seems wholly lacking any testimony that any particular blow or act of either the deceased or his wife aroused any passion on the part of appellant or was capable thereof. The case is wholly different from Hathcock v. State, 263 S. W. 587, and the other authorities cited and relied on by appellant. In the Hathcock case, supra, there was unquestionably a fight directly between the accused and the deceased, ending in the fatal blow. The accused and his witnesses swore that deceased struck appellant in the face and thus began the fight. Nothing in the opinion in that case based on those facts can be deemed contrary to our conclusion here announced. The objection to the charge on manslaughter, under the facts of this case, does not possess merit. Nor do we deem the objections raised in bills of exception Nos. 22 and 23 to be such as to call for any extended discussion from us. As we view the evidence raising manslaughter, it was of slight moment. The court correctly charged the jury to convict of no more than manslaughter in case they believed appellant guilty of some grade of homicide, but had a reasonable doubt as to whether he was guilty of murder or manslaughter. Charges which go beyond this should not be given, and but multiply issues to the confusion of the jury.

Appellant's bills of exception Nos. 32-34 present lengthy objections to the court's charge after same was corrected in an effort to conform same to appellant's exceptions originally presented thereto. We do not deem the matters thus presented to possess sufficient merit to justify us in taking the time and space necessary to present an intelligent discussion of the matters thus raised.

We have examined the other complaints of appellant which are not briefed, but are unable to bring ourselves to believe any of them to present reason for reversal. The facts in the case are sufficiently stated in our former opinion, which is above referred to.

Being of opinion that appellant has had a fair and impartial trial, and that his conviction is sustained by the testimony, the judgment will be affirmed.

*Affirmed.*

HAWKINS, JUDGE.—Appellant is under conviction for murder with the punishment assessed at ten years' confinement in the penitentiary.

An opinion of this court has heretofore been delivered affirm-

ing the judgment of conviction.   A motion for rehearing was ·
filed by appellant and is pending in this court at this time.

Appellant now files his affidavit advising the court that he
desires to withdraw the motion for rehearing.

Complying with his request, the motion for rehearing is dis-
missed and mandate is ordered issued upon the original opinion.

*Motion withdrawn.*