ALLEN B. CALLOWAY V. STATE.

No. 24289. Delivered March 16, 1949.

*Norris W. Lovett* and *Doyle Pevehouse,* Corsicana, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with the murder with malice of J. D. Dunlap, and upon his trial, he was convicted therefor and assessed a penalty of three years in the penitentiary.

The facts show that appellant was a guard and was in charge of other guards out at the municipal airport at the air activities in Corsicana, same being a primary army flying field. On June 4, 1942, the deceased was a guard at such point and all the guards wore pistols. They went in and out of said field at a gatehouse in the enclosure of such field. Mr. Renfro (a guard) and the deceased, among others, were preparing to enter the field through this gatehouse when appellant struck Renfro with his fist and shot the deceased, who was a short distance behind Renfro. The state's testimony shows that the deceased had a lunch kit in his right hand, evidently going on the night shift. He was shot several times, there being, according to the undertaker, 20 bullet holes in his body, after which appellant struck

him over the head with his pistol. Appellant then picked up the deceased's pistol, walked back some few feet to the gatehouse, and sat down in the door with a shotgun across his knees.

Appellant offered proof showing enmity between himself, the state's witness Renfro, and the deceased, who were brothers-in-law; that the deceased had theretofore approached him about selling liquor out at the airport, and appellant had repulsed such offer; that thereafter the deceased never did seem to be the same towards him.

On the day of the shooting, Renfro passed appellant and kicked him on his leg that had been broken; that appellant then struck Renfro with his fist and he ran off; that this made appellant "as mad as the devil"; that he then saw the deceased approach him in a round-about way. He saw deceased pulling his pistol and he then struck him with his fist. Appellant said, "He reached for his gun first and I pulled mine and shot. * * * I wasn't mad at him at all; they were the ones that were mad. * * * I shot in defense of my life; that's the reason I shot." On cross-examination he testified: "I had been warned about both of them sometime before this happented; as they said, it had been brewing. * * * I had been warned that these two men were looking for trouble."

Bill of Exception No. 1 arose over the following questioning of one of appellant's witnesses who had testified to appellant's reputation for being peaceable and law-abiding:

"Question: Mr. Curington, had you heard that Mr. Calloway participated in the killing of a Mexican some years ago?

"Mr. Lovett: We object to that unless it is shown that he was indicted when it happened. I think he is talking about a killing that took place some thirty years ago.

"The Court: I overrule the objection.

"Mr. Lovett: We except.

"Answer: As to whether I had heard about Mr. Calloway being implicated in the killing of a Mexican, I'll have to state it this way: That he and Mr. Sheets attempted to arrest a Mexican about the bus station and they killed him."

Mr. Curington had testified as a character witness for appellant that his general reputation for being a peaceable, law-abiding citizen was good. Upon cross-examination he was asked the questions and gave the answers as shown in the foregoing

bill. It has long been the rule that a witness who deposes to the good character of an accused may be cross-examined as to whether he has heard of specific acts of misconduct on accused's part which, if known to the witness, might affect the weight of his testimony in the opinion of the jury. See Wright v. State, 98 Tex. Cr. R. 513, 266 S. W. 783; Cardwell v. State, 126 Tex. Cr. R. 420, 71 S. W. (2d) 880, and cases therein cited.

Bill No. 2 relates to a question propounded to this same character witness relative to whether or not he had heard of appellant having killed a white man in Arizona. There was no time element mentioned therein, and under our ruling in Bill No. 1, we see no error reflected herein.

Bill No. 3 is not allowed by the trial court, he stating that no . such question was asked nor answered. This qualification was accepted by appellant. We therefore, overrule this bill.

Bill No. 4 complains because the trial court failed and refused to charge the jury on the law of communicated threats. The trial court qualifies this bill with the statement that such a charge was not called for by the evidence in the case, and we are inclined to agree with this qualification. Appellant testified as follows:

"I had been warned that I had a party to watch out for; somebody else had told me that someone might give me some trouble out there; he said they might start trouble and if I had it with one I would have it with both. * * * I had been warned about both of them sometime before this happened; as they said, it had been brewing."

On cross-examination, appellant testified:

"As to why in the world Renfro kicked me, will state, why did he do some of the other things he did out there; if I got around that gatehouse Renfro deliberately, if he did it once he did it twelve times, when he would get a chance, just walk over my crippled leg and never beg my pardon or say anything; I always had to keep it out of his way; he just asked for it; as to whether I had been warned about Renfro, will state that I had been warned about both of them; Mr. Carver and Mr. Gilcrease warned me; Mr. Gilcrease is dead; I don't know when he died; I just heard of his death; I think he died several years ago. Dock Carver was the other man who warned me; he said they were mad and were going to cause trouble; they were mad because they had been moved around on the job; I had moved

both of them; Dock Carver didn't tell me that either one of them had said they were going to kill me; he said I would have trouble, and if I had trouble with one of them I would have it with both; he just said they were going to cause trouble."

We express the opinion that there is no testimony shown herein relative to any threats made by the deceased, nor any such communicated to appellant, and the careful trial court was not called upon by the facts to charge upon the law of threats.

Bills Nos. 5 and 6 relate to the court's charge, and we think they are without merit.

Bill No. 7 also relates to the court's failure to charge on the law of communicated threats, which we have noticed in Bill No. 4. It is worthy of note, however, that in the qualification to this bill, it is shown that appellant testified: "I never anticipated any kind of trouble, Mr. Banister, because either one of those men was my superior physically." We see no error shown in the failure to charge on the law of threats.

We think the court's charge fairly and fully presented appellan's defense, as well as the law of the case, and the judgment will be affirmed.