Alise Gaines LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 45218.

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Rehearing Denied Nov. 22, 1972.

John H. Mikkelsen, Vernon, Tom A. Neely, Wichita Falls, for appellant.

Bill Neal, Dist. Atty., Vernon, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for murder without malice; the punishment, five years imprisonment.

The appellant first contends the evidence is insufficient to support the conviction.

Reva May Berry, the deceased, Della Wilcox and the appellant all came to the house of Erma Jean Trindle at about dusk. They gave Erma several cans of beer. Soon after they had arrived the appellant said, "Reva, I don't know what you are going to do for beer. You ain't got no more." As Erma returned from placing the beer in the refrigerator, she heard Reva, who was standing in front of the appellant, say, "You're a lying bitch." After some more words were said, "Reva hit the appellant up side the head with her purse." The appellant's beads were broken and fell to the floor. Some unfriendly words then passed between Reva and Della.

After responding to a knock on the door, Erma looked around and saw that the appellant was out of her chair and coming toward Reva. As the appellant and Reva were standing facing each other the appellant appeared to hit Reva with her fist at the base of the neck. Erma did not see a knife in the appellant's hand. Reva did not say anything and did not take any action toward the appellant. Erma, fearing that the fight would continue, told Reva that she and the appellant were going to have to leave. Erma looked toward the appellant, who was then sitting in a chair, and when Erma looked back toward Reva May, she seemed like she was "grapping for breath . . . I saw this blood and

I said, 'Alise, you done cut Reva May.' She said, 'No, I didn't cut her. I hit her in the temple with my shoe,' and by this time Reva May fell."

Erma went to call the police. As she was going out the door the appellant came out with her and Erma heard something hit the fence behind her and said, "What's there?" and the appellant replied, "Somebody's chunking."

The police were notified and an ambulance soon came to the scene. The ambulance was driven by a funeral director, a licensed embalmer, who had pursued his profession for a number of years. On arriving at the scene, he checked for the pulse and heartbeat of the deceased and found that she was dead. He observed a small wound about "an inch above her sternum."

An investigating officer who arrived on the sceen observed a knife wound in the throat of the deceased. It was a slit-type wound about one-half to three-quarters of an inch long. There was a little fresh blood coming out of the wound.

Another officer at the sceen found Reva May Berry lying on the floor, saw the wound and observed blood trickling from it. After a conversation with Erma, the officer searched near the fence close to the house and found a knife at the south end of the porch. The officer saw what appeared to be blood on the large blade of the knife. The blood was drying, but it was still pliable.

A physician, qualified as an expert, who had not examined the body of the deceased, testified to a hypothetical question based upon evidence in the case that within medical probability the death of the deceased could have been caused by a blow from the knife. The physician further testified that "(w)ithin an area of approximately two inches of the site of the wound, there are . . . eleven structures, not including the lungs which can cause death, vessels which could be severed and cause death in a short period of time."

**106**

■ The cause of death as a result and effect of the wound was sufficiently shown when the deceased, who was in apparently good health, immediately fell and died within a short time. See, *e. g.*, Scott v. State, 47 S.W. 531 (Tex.Cr.App.1898); Tellez v. State, 162 Tex.Cr.R. 456, 286 S.W.2d 154 (1955); Morris v. State, 168 Tex.Cr.R. 29, 322 S.W.2d 632 (1959); 4 Branch's Ann. P.C.2d § 2025 at 336; 20 Tex.Digest, Homicide, ■

■ The appellant urges that the intent to kill the deceased was not shown. Intent to commit murder may be presumed from the use of a weapon deadly per se, or where death results from the use of an instrument not considered as deadly per se, a jury may find an intent to kill from the circumstances accompanying the use of the instrument. O'Brien v. State, 365 S.W.2d 797 (Tex.Cr.App.1963); Phillips v. State, 216 S.W.2d 213 (Tex.Cr.App.1948); 20 Tex.Digest, Homicide, ■

■ The pocket knife, alleged to be the instrument used, was not a weapon deadly per se. A specific charge on intent to kill was submitted to the jury. The weapon was introduced and was before the jury for its consideration. There was evidence before the jury as to the place where the wound was inflicted and of the vital organs located there. There was testimony and a demonstration by an eye-witness as to the manner and the force used in the inflicting of the wound. There was sufficient evidence before the jury for it to find an intent to kill. See, e. g., O'Brien v. State, supra; Green v. State, 157 Tex.Cr.R. 546, 251 S.W.2d 736 (1952).

In grounds of error numbers three and four the appellant urges the trial court committed error "after placing the witnesses under the rule to allow said rule to be temporarily suspended for the purpose of allowing one witness to observe a subjective demonstration by another witness" and "in permitting the medical expert to respond to hypothesis not in evidence and to base conclusions thereon as well as on

speculative, subjective demonstrations by another witness."

The appellant had invoked the rule and the trial court had placed all witnesses under the rule. During the trial of the case the court then permitted a physician to remain in the courtroom and hear a portion of the testimony of the witness Erma Trindle and to observe her demonstrate the force used and the manner in which the appellant had struck the deceased. The expert witness was then permitted to answer a hypothetical question based on testimony and legitimate inference from testimony and the demonstration of the witness Erma Trindle.

■ It was proper to permit the witness to demonstrate before the jury so as to make more plain and clear her testimony. Stembridge v. State, 94 Tex.Cr.R. 207, 250 S.W. 180 (1923); Hickox v. State, 104 Tex.Cr.R. 649, 285 S.W. 621 (1926); Meador v. State, 105 Tex.Cr.R. 590, 289 S.W. 691 (1926); Hicks v. State, 97 Tex.Cr.R. 373, 261 S.W. 579 (1924).

■ The trial court is vested with discretion and may permit expert witnesses to be exempt from the rule in order that they may hear other witnesses testify and then base their opinion on such testimony. Carlile v. State, 451 S.W.2d 511 (Tex.Cr.App. 1970).

■ We find no abuse of discretion in this case in excusing the physician from the rule and the fact that the expert witness was permitted to observe the demonstration made by the witness as well as to hear her testimony was proper. The appellant's argument that because the physician was initially placed under the rule the trial court was precluded from later exercising discretion to exempt him from the rule is without merit.

The appellant complains that the "have you heard" questions used by the State in cross-examination of the appellant's character witnesses were based upon acts too remote in time.

Witnesses attesting the good reputation of an accused may be asked on cross-examination whether they have heard of acts of the accused inconsistent with that reputation to test the weight, credibility and sincerity of their testimony. See, e. g., Cooper v. State, 470 S.W.2d 702 (Tex.Cr. App.1971); Smith v. State, 411 S.W.2d 548 (Tex.Cr.App.1967) and Vance v. State, 365 S.W.2d 182 (Tex.Cr.App.1963). These inquiries on cross-examination have not been restricted to acts occurring within any specific time limits. They have not been held subject to the objection of remoteness. Calloway v. State, 218 S.W.2d 469 (Tex. Cr.App.1949); Richardson v. State, 154 Tex.Cr.R. 422, 228 S.W.2d 179 (1950); Vance v. State, 365 S.W.2d 182 (Tex.Cr. App.1963); Cooper v. State, 470 S.W.2d 702 (Tex.Cr.App.1971); 1 Branch's Ann. P.C.2d § 173 at 175 (2d ed. 1956). It appears that the trial court held this cross-examination by the State within reasonable bounds.

The judgment is affirmed.

Opinion approved by the Court.