

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00391-CR

**JOSE EDUARDO CASTILLO,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 10-02592-CRF-272

## MEMORANDUM OPINION

Jose Eduardo Castillo was convicted of two counts of Engaging in Organized Criminal Activity and sentenced to 30 years in prison. *See* TEX. PENAL CODE ANN. § 71.02 (West Supp. 2013). A deadly weapon finding was entered for each count. Because the evidence was sufficient, the trial court did not err in admitting expert testimony, and there was no harm in permitting the expert to remain in the courtroom during cross-examination of another witness, the trial court's judgment is affirmed.

## BACKGROUND

Castillo is a member of the Latin Kings criminal street gang in Bryan, Texas. Robert Gongora and Christopher Hutchson belonged to a rival gang. Gongora broke the arm of Joey Reyes, a Latin King member, during a fight outside a bar where a large group of Latin King members, including Castillo, were gathered. Several of the Latin King members pursued Gongora and Hutchson who were "jumped" later that night in front of a church. Minutes later, Gongora and Hutchson were again "jumped" in a neighborhood. Gongora was kicked and Hutchson was shot. Hutchson died from the shooting.

Castillo was arrested a year later and charged with engaging in organized criminal activity. A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate … as a member of a criminal street gang, he commits or conspires to commit one or more of certain enumerated offenses. *See* TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2013). Relevant to this appeal, one of the enumerated offenses is aggravated assault and one of the manners in which a person commits aggravated assault is by committing assault (bodily injury) and using or exhibiting a deadly weapon. *Id*. (1); §22.02(a)(2) (West 2011).

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Castillo argues the evidence is insufficient to support a

finding of guilt in Counts One (the offense against Hutchson) and Two (the offense against Gongora) beyond a reasonable doubt. Specifically, Castillo contends the evidence is insufficient to support Count One because: 1) there is no evidence that a deadly weapon was used or exhibited; 2) there is no direct evidence of an agreement to commit aggravated assault; and 3) there is no evidence of an intent to establish, maintain, or participate in a criminal street gang at the assault at the church. Specifically, Castillo contends the evidence is insufficient to support Count Two because: 1) the actual events would not have caused serious bodily injury; thus, Castillo's foot was not a deadly weapon; 2) the evidence was insufficient to show Castillo committed assault; and 3) the evidence was insufficient to show Castillo agreed to commit or that others would commit aggravated assault. In issues three and four, Castillo argues the evidence was insufficient to support the deadly weapon findings made by the jury as to Counts One and Two at the punishment phase of the trial.

*Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,

> to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

*Count One—Offense Against Hutchson*

In Count One, Castillo was charged, as the enumerated offense in Engaging in Organized Criminal Activity, with causing bodily injury to Christopher Hutchson by striking Hutchson with a firearm, and that a deadly weapon, a firearm, was used or exhibited.

<u>Firearm</u>

On appeal, Castillo contends there was no evidence that a firearm was used or exhibited. He argues that the State's reliance on Hutchson's "hearsay" statement to Robert Gongora after the fight that he had been "pistol-whipped" was not enough. Nothing, he continues, indicated that Hutchson saw a weapon or that the injury he sustained was caused by a firearm.

Gongora testified that after the fight with Joey Reyes, he and Hutchson began walking over to Jared Gonzales's house. They were by a church when two vehicles sped toward them. A number of people exited the vehicles. Gongora ran, but three to four people, one being Castillo, ran after him and began beating him. The beating stopped when a pickup drove down the street. Gongora then ran over to where Hutchson was standing. Gongora saw Hutchson fighting with a big group of people, some of whom were swinging traffic cones at Hutchson. By the time Gongora arrived at Hutchson's location, the group had dispersed and left in the vehicles. Hutchson, who was still "amped up," then told Gongora that Hutchson had just been "pistol whipped."

No objection was made to this testimony. Hutchson also showed Gongora the wound on the back of Hutchson's head.

The medical examiner, Kendall Crowns, testified that there was an L-shaped laceration on the back of Hutchson's head that could be consistent with being "pistol whipped." The laceration was the result of a very hard hit, such as "trying to hit a baseball out of the park." The jury also heard that Latin King members, including Castillo, were known to carry weapons such as firearms; that they committed violent offenses, such as drive-by shootings; and that Jorge Soto, the leader of the Latin Kings in Bryan, and another member wanted to make it mandatory for all Latin Kings to carry weapons.

Because we evaluate all of the evidence in the record in the light most favorable to the verdict, both direct and circumstantial, whether properly or improperly admitted, we conclude a rational fact finder could have found a firearm was used or exhibited during the assault made the basis of Count One.

*Agreement to Commit/Intent to Participate*

Castillo also argues that the evidence is insufficient to support the jury's verdict as to Count One because there was no direct evidence of an agreement to commit an aggravated assault and there was no evidence of an intent to establish, maintain, or participate in a criminal street gang. Because direct evidence is rarely available to prove the existence of an agreement of this nature, circumstantial evidence is sufficient and is

almost always needed.  *Flores v. State*, No. 10-11-00251-CR, 2013 Tex. App. LEXIS 5757, *22 (Tex. App.—Waco May 9, 2013, pet. ref'd)(not designated for publication) (citing *Nwosoucha v. State*, 325 S.W.3d 816, 831 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).  The jury may therefore infer an agreement among a group working towards a common goal.  *See Id*.  Further, direct evidence of a requisite intent to establish, maintain, or participate in the criminal street gang is not required.  *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Samaripas v. State*, No. 13-11-00442-CR, 2013 Tex. App. LEXIS 430, *11 (Tex. App.—Corpus Christi Jan. 17, 2013, pet. granted (on other issues)) (publish).  "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime."  *Hart*, 89 S.W.3d at 64 (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (J. Meyers concurring)) (internal quotation marks omitted); *Samaripas*, 2013 Tex. App. LEXIS 430 at *11-12.

The jury heard testimony that the local Latin Kings were known for shooting at others and using weapons.  They were involved in everything from drive-by shootings, to fights, to burglaries to acquire firearms.  The guidelines of the gang provided that a Latin King could not stand idle while another Latin King was in need of assistance.  In the gang culture, if a gang member is assaulted, the gang retaliates without police involvement.

The Latin King group at the bar, of which Castillo was a part, was upset that

Reyes had been hurt and after the fight, asked a bar employee where Gongora and Hutchson had gone. Castillo and several other Latin Kings went looking for Gongora and Hutchson; they all wanted to hurt Gongora and Hutchson badly.

The State's street gang expert believed that Castillo and the other Latin King members pursued Gongora and Hutchson that night to retaliate because Reyes had been hurt. The expert also believed the retaliation was to further the goals of the Latin King gang.

In reviewing all the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found an agreement to commit an aggravated assault and an intent to establish, maintain, or participate in a criminal street gang.

Accordingly, the evidence is sufficient to support Count One. Issue One is overruled.

### Count Two—Offense Against Gongora

In Count Two, Castillo was charged, as the enumerated offense in Engaging in Organized Criminal Activity, with causing bodily injury to Robert Gongora by striking Gongora with hands or feet, and that a deadly weapon, a hand or a foot, was used or exhibited.

#### Deadly Weapon/Assault

On appeal, Castillo argues the evidence is insufficient to support the verdict because the actual events would not have caused serious bodily injury; thus, Castillo's

foot was not a deadly weapon. Castillo contends that Gongora described being kicked in the face and ribs and that his injuries were only bruising and redness; not serious bodily injury. Castillo also argues that the evidence is insufficient to show Castillo committed assault. Castillo primarily contends that the evidence is insufficient because Gongora did not immediately identify Castillo as his attacker.

A deadly weapon, as applied to this case, is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* (a)(46). The placement of the word "capable" is crucial to understanding this method of determining deadly-weapon status. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *Mechell v. State*, 374 S.W.3d 454, 458 (Tex. App.—Waco 2011, pet. ref'd). The State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use *is capable of* causing death or serious bodily injury." *Id*. (Emphasis added). Further, as we stated earlier, the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

After the fight at the church, Gongora and Hutchson continued on toward Jared

Gonzales's house. A vehicle drove past them, and an occupant shouted, "You shouldn't have jumped my brother." Gongora and Hutchson ran and jumped fences to elude the pursuers. They were quickly cornered, and Gongora was hit from behind and knocked down. As he started to get up, Castillo kicked Gongora in the face. He then kicked Gongora in the ribs. Castillo was wearing boots when he kicked Gongora.

Both a City of Bryan police officer and the medical examiner testified that a foot was capable of causing serious bodily injury or death and specifically, a kick to the face could cause serious bodily injury. It is of no consequence that Castillo's kick did not actually cause serious bodily injury. And although Gongora may have waited to tell police that Castillo kicked him, the jury heard testimony that gang members often do not want to cooperate with the police.

After reviewing the evidence in the light most favorable to the verdict, we conclude a rational juror could have found that Castillo committed the assault on Gongora and that Castillo's foot was a deadly weapon.

*Agreement to Commit*

Castillo also argues that the evidence was insufficient to show Castillo agreed to commit or that others would commit aggravated assault. For the same reasons stated in the "Agreement to Commit/Intent to Participate" subsection as to Count One, we conclude a rational juror could have found that Castillo agreed to commit aggravated assault.

Accordingly, the evidence is sufficient to support Count Two. Issue Two is overruled.

*Deadly Weapon Findings*

In his next two issues, Castillo contends the evidence is insufficient to support the deadly weapon findings for both Count One and Count Two made by the jury at punishment.

Because we have already found the evidence sufficient to support the finding of use or exhibition of a firearm as to Count One, and a firearm is a deadly weapon per se, TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2013), we need not discuss again whether the evidence was sufficient to support the deadly weapon finding as to Count One. Likewise, because we have already found the evidence sufficient to show that Castillo's foot was a deadly weapon, we need not discuss again whether the evidence was sufficient to support the deadly weapon finding as to Count Two. Further, because the indictment alleged Castillo used or exhibited a deadly weapon as to both Count One and Count Two, and the jury found Castillo guilty as to both Counts "as charged in the indictment," the punishment phase determination of a deadly weapon was not necessary for the trial court to enter a deadly weapon finding in the judgment as to Counts One and Two. *See Vasquez v. State*, 56 S.W.3d 46, 47 (Tex. Crim. App. 2001) ("In *Polk v. State*[, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985)],we explained that, in a jury trial, a trial court is required to enter a deadly weapon affirmative finding in three

situations: where the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically pled in the indictment; (2) found guilt as alleged in the indictment but, though not specifically pled as a deadly weapon, the weapon pled is per se a deadly weapon; or (3) affirmatively answered a special issue on deadly weapon use.").

Accordingly, issues three and four are overruled.

**EXPERT WITNESS**

Castillo next contends that the trial court erred in admitting the testimony of A.C. Schooler as an expert witness on criminal street gangs because she was not qualified to testify as an expert and her opinion was unreliable. Initially we note that Castillo did not object at trial to Schooler's qualifications as an expert; thus, any complaint on appeal about her qualifications is waived. TEX. R. APP. P. 33.1; *Miller v. State*, 343 S.W.3d 499, 502 n. 2 (Tex. App.—Waco 2011, pet. ref'd).

As to the reliability of Schooler's opinion, Castillo argued at trial that Schooler's method and the application of her method was unreliable because: 1) Schooler had no idea who came up with the Article 61 criteria in the Code of Criminal Procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 61 (West 2006 & Supp. 2013), and her own personal criteria also had not been tested; 2) there was no peer-reviewed literature; 3) there was no information on the rate of error; 4) there were no studies or professional literature supporting or rejecting the method that the Code of Criminal Procedure or that

Schooler used; and 5) the criteria she used had not been tested by the scientific method, that is, there were no experiments or literature that would support her testimony as reliable.

On appeal, Castillo contends Schooler's opinions were unreliable because Schooler knew of no social science research which evaluated the reliability of the criteria upon which she relied; she would not know where to look for such research; and she asserted there was no way to test the reliability of gang membership criteria. Castillo appears to assert that because the Court of Criminal Appeals has recognized "social science research" on some topics, such as eyewitness identification reliability, Schooler should have been able to find research to support her opinions. But the Court of Criminal Appeals has also said that "expert testimony does not have to be based upon science at all; by its terms, Rule 702, by applying to 'technical or other specialized knowledge,' permits even nonscientific expert testimony." *Morris v. State*, 361 S.W.3d 649, 654 (Tex. Crim. App. 2011). Further, the behavior of gangs is a generally accepted area of expert testimony which involves the gaining of specialized knowledge through experience or personal research. *Id*. at 656.

Schooler testified that she had been with the Bryan Police Department for 11 years. She was very familiar with the local Latin Kings criminal street gang. For six years on patrol, Schooler investigated gang related activity on many occasions. She was then assigned to the Special Investigations Unit where, for two and a half years, she

focused on gangs and kept the Unit's database on gang members current. She used the criteria supplied by the Code of Criminal Procedure and her own criteria based on training and experience to determine whether to enter a person into the gang database. Schooler's assignment at the time of trial was with the Bryan Police Department-Criminal Intelligence Unit where she collected information on criminal street gang members, analyzed and evaluated the information, and stored it in a way that it would be available to other departments and agencies to use it when necessary. Her duties required her to deal with gangs 95% of the time, and she interviewed gang members who were both victims and suspects of a crime.

Based on the application of these facts to the criteria cited in *Nenno v. State*, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999)), we find the trial court did not err in admitting Schooler's testimony over Castillo's reliability objection. His fifth issue is overruled.

### EXCLUSION OF WITNESS—THE RULE

Castillo argues in his last issue that the trial court erred in overruling Castillo's objection to allowing the State's expert witness to remain in the courtroom during Castillo's cross-examination of the medical examiner. Specifically, he complains that the trial court's action permitted Schooler, the State's expert, to have a preview of Castillo's cross-examination on the issue of the reliability of expert opinions using the

scientific method. This was the second time Castillo objected to Schooler's presence in the courtroom. He does not complain about the trial court's ruling on his first objection.

Texas Rule of Evidence 614, otherwise referred to as "the Rule," provides for the exclusion of witnesses from the courtroom during trial. TEX. R. EVID. 614. The purpose of Rule 614 is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). However, Rule 614 does not authorize the exclusion of certain witnesses. *See* TEX. R. EVID. 614. In criminal cases, those witnesses are,

> (1) a defendant who is a natural person, the representative of a defendant that is not a natural person, (2) a person whose presence a party shows to be essential to the presentation of the party's case, and (3) a victim if the court does not determine that the victim's testimony would be materially affected by hearing other testimony.

*Russell*, 155 S.W.3d at 180 (citing TEX. R. EVID. 614). A trial court may, however, permit expert witnesses to be exempt from the rule so they may hear other witnesses testify and then base their opinions on such testimony. *See Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972); *see also Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Assuming without deciding that the trial court erred in permitting Schooler's presence during Castillo's cross-examination of the medical examiner, we find no harm. *See* TEX. R. APP. P. 44.2(b). The medical examiner testified as to the purpose of the scientific method at the end of the first day of testimony in the guilt/innocence phase of

the trial. Schooler was the last witness to testify six days later. Further, by the time she testified, she had already heard a fellow officer cross-examined about the methodology of the criteria used to consider a person to be a gang member. Then, when asked whether she heard the cross-examination of the medical examiner about the scientific method and its purpose, she replied that she had "missed that." Even if she had heard the prior testimony, the record does not indicate that her testimony was influenced by the medical examiner's testimony. Schooler had not conducted any tests of the reliability of the Article 61 criteria pursuant to the scientific method.

Castillo's sixth issue is overruled.

**CONCLUSION**

Having overruled each of Castillo's issues on appeal, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed May 1, 2014
Do not publish
[CRPM]