LELA STEMBRIDGE V. THE STATE.

No. 7658. Decided April 11, 1923.

**1.—Murder—Experimental Evidence.**

Where, upon trial of murder, the defendant pleaded self-defense, and it was necessary for the State to rely upon proof of circumstances to refute defendant's statement as to the manner of the killing, and counsel for the State produced in the court-room and set up a bedstead with mattress, pillows, sheets, and covering, and had witnesses to demonstrate before the jury the exact condition as to the location of the body of the deceased, etc., at the time it was discovered, for the purpose of showing the incorrectness of defendant's testimony, there is no reversible error.

**2.—Same—Evidence—Experimental Testimony.**

There was no error in permitting a physician to testify in the presence of the jury as to the location of the wounds and the range of the bullets, and to demonstrate this on the person of one of the prosecuting officers by having him lie down in the presence of the jury.

**3.—Same—Evidence—Declarations and Acts of Third Parties.**

While appellant was testifying, she was asked upon cross-examination if it were not a fact that her husband had found out about her running around with another man and objected to it, which she denied, and also denied that this other man procured bond for her and paid her lawyers; whereupon the State in rebuttal over defendant's objection introduced testimony contradicting the appellant as to her denial that third person secured

bond and attorneys for her. *Held*, that this was reversible error in the absence of a showing that defendant was in some way a party thereto or had knowledge thereof. Following Cone v. State, 86 Texas Crim. Rep., 391, and other cases.

**4.—Same—Evidence—Declaration of Others—Declaration of Third Party— Rule Stated—Impeaching Testimony.**

If it was the theory of the State that proof of the third party's acts was admissible as impeaching defendant wherein she denied that said third party had employed her attorneys or paid persons to execute her bond, then the principle announced in Nader v. State, 86 Texas Crim. Rep., 424, and other cases, applies, but said third party had not been called as a witness, and the testimony objected to could not even be used for the purpose of impeaching defendant, in the absence of knowledge on her part.

Appeal from the District Court of Johnson.  Tried below before the Hon. Irvin T. Ward.

Appeal from a conviction of murder; penalty, fifteen years in the penitentiary.

The opinion states the case.

*Chrisman & Chrisman* for appellant.—On question of experimental testimony, Hughes v. State, 148 S. W. Rep., 543; Holsey v. State, 5 id., 523.

On question of additional evidence after parties close case, Kemper v. State, 138 S. W. Rep., 1025; Forman v. State, 67 S. W. Rep., 583; Earle v. State, 56 id., 32.

*R. G. Storey*, Assistant Attorney General, for the State.

HAWKINS, Judge.—Appellant is under conviction for the murder of her husband, George Stembridge, her punishment being assessed at fifteen years imprisonment in the penitentiary.

On the morning of December 17, 1921 about five-thirty o'clock a young lady who was staying at the Stembridge home and a small girl appeared at the police station in Cleburne and requested one of the officers to go home with them. They did not tell him why he was wanted there, but that appellant would tell him when he reached there. Upon arriving the officer made inquiry as to why he was wanted and appellant told him she had killed her husband. She did not make a statement as to the cause of the killing. This officer and other parties who arrived about this time or shortly afterward described in detail the location of deceased's body upon the bed. He was shot three times, there being powder burns on some portions of his underclothing. He was covered with the bed clothing from his feet upon his waist. We do not think it necessary to detail the evidence. It is the theory of the State that appellant killed her husband on account of her association with one Nim Burdette, and in order that she might continue her relations with him undisturbed. It is

in evidence that the automobile of Burdette was frequently seen parked at the Stembridge home both in the day time and at night; that he and appellant were seen out riding frequently, and had been seen together in restaurants about the city of Cleburne, both before and after the killing. Appellant claims to have killed her husband in self-defense and because he threatened to have improper relations with their minor daughter about fourteen years old. It developed upon the trial that this daughter had been sent out of Texas by appellant and no effort had been made to have her present at the trial or to take her deposition.

It being necessary for the State to rely upon proof of circumstances to refute appellant's statement as to the manner of the killing, counsel for the state had produced in the court room and set up a bedstead with mattress, pillows, sheets and covering, and had the parties who first reached the scene of the killing to place themselves in the bed in the presence of the jury in the position the body of deceased was found, and to arrange the covering as it was at the time. On cross-examination of appellant the district attorney requested her to take the pistol and place herself in the bed in the position she claimed to have been in at the time of the killing, and to place him in the position she claimed her husband was, and to demonstrate to the jury how the shooting occurred. We gather from the record that her efforts to do this did not comport with the physical facts. Objection was interposed by counsel for appellant to this demonstrative evidence, and to the presence of the bed, bed clothing, etc., in the courtroom. We are not aware of any rule of evidence which was violated by such proceedings. It is true the same bedstead and the same bed clothing were not used as was found at the place of the homicide, and it likely would have been improper for the State to have undertaken to use such bed clothing as it more than likely had blood on it; but there is no merit in the insistence of appellant that this proceeding was objectionable because the identical bedstead and bed clothing were not used. The effort on the part of the State was to get before the jury the exact conditions as to the location of the body upon the bed and the arrangement of the bed clothing at the time the body was discovered, for the purpose of showing the incorrectness of appellant's testimony.

Neither do we find any error committed by the court in permitting the physician to testify in the presence of the jury as to the location of the wounds and the range of the bullets, and to demonstrate this on the person of one of the prosecuting officers by having him lie down in the presence of the jury.

While appellant was testifying she was asked upon cross-examination if it was not a fact that her husband had found out about her running around with Nim Burdette and objected to it. She denied this, and also denied that she did go riding with Burdette or that he

94 T. C.—14

frequently came to the house. She was then asked if Burdette did not pay one Ed Herd to go on her bond in this case, and if said Burdette did not pay her lawyers to defend her. To this appellant replied that she did not know anything about Burdette "putting up" any money to pay Herd to go on her bond, and that she hired her lawyers herself while in jail, and that she did not get the money from Burdette to pay them. The State in rebuttal, over objection, proved by said Herd that he was paid a fee by Burdette to make the preliminary bond for appellant, and that Burdette also paid the attorney fee for appellant, having borrowed the money from him for that purpose. Various objections were urged to this testimony, one being that it was purely hearsay in so far as appellant was concerned. The bills of exception presenting the alleged error of the court in admitting this evidence are signed without qualification or explanation by the learned trial judge, and we are without information upon what theory the State offered or the court admitted it. The general rule will be found stated in note 90, under article 873, page 639, Volume 2, Vernon's Crim. Statutes, 1916, as follows:

"Conversations, statements, and acts of third persons, had, made, and performed in the absence of the defendant, are ordinarily not admissible in evidence against him or in his behalf."

Many cases will be found collated under the statement just quoted illustrating the rule. It nowhere appears in the record directly or inferentially that appellant knew of Burdette securing signers to her bond or paying her attorneys. She denies that she knew anything about it and asserts that she herself arranged for her attorney fee without the aid of Burdette. These acts of Burdette were not admissible against appellant unless she was in some way a party to the same, or had knowledge thereof, or assented thereto. Cone v. State, 86 Tex. Cr. Rep., 291, 216 S. W. Rep., 190. If there is any evidence in the record which indicates that she had any knowledge of Burdette's acts, or assented thereto, or was in any way a party to the same, it has been overlooked by us. Illustrating the rule excluding such testimony we cite also Wood v. State, 85 Tex. Cr. Rep., 268, 211 S. W. Rep., 782; Bloxom v. State, 86 Tex. Cr. Rep., 562, 218 S. W. Rep., 1068. Many other cases will also be found collated by Mr. Branch in his Ann. Pen. Code under Section 695, page 354, under the rule that proof of acts or declarations of a co-conspirator done or made in the absence of the party on trial after the commission of the offense and the termination of the enterprise is not admissible against such party. There is nothing in this record to show that Burdette and appellant were co-conspirators in the killing of her husband. This evidence is bound to have been appropriated by the jury as confirming the theory of the State that an intimacy existed between Burdette and appellant; and the acts of Burdette subsequent to the killing could reasonably have been used by the jury as furnish-

ing a motive upon appellant's part for the act charged against her. If it was the theory of the State that proof of Burdette's acts was admissible as impeaching appellant wherein she denied that Burdette had employed her attorneys or paid persons to execute her bond, then the principle announced in Nader v. State, 86 Tex. Cr. Rep., 424, 219 S. W. Rep., 474, and Coleman v. State, 90 Texas Cr. Rep., 297, 235 S. W. Rep., 898 applies. If Burdette had been a witness for appellant, to show his bias or interest in the matter, his acts in employing her attorneys or securing bail for her could properly have been inquired into by the State; but Burdette was not called as a witness and therefore the testimony objected to could not even be used for the purpose of impeaching appellant in the absence of a showing that Burdette had employed her attorneys and made her bond at her instance or with her knowledge.

There being no question but that the testimony objected to was seriously harmful to appellant, and that the court fell into error in admitting the same, it becomes our duty to reverse the judgment and remand the cause for a new trial, and it is so ordered.

*Reversed and remanded.*