**Richard RUNNELS Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00773–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 9, 2006.

Calvin Garvie, Bellville, for Appellant.

Travis J. Koehn, Criminal District Attorney–Austin County, Daniel W. Leedy, Asst. Crim. Dist. Atty., Bellville, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

Charged with murder, appellant, Richard Runnels Jr., was convicted by a jury of the lesser included offense of manslaughter, and the trial court assessed punishment at 16 years in prison. *See* TEX. PEN.CODE ANN. § 19.04 (Vernon 2003). We determine whether appellant preserved for review his appellate complaint about the trial court's allowing the State to conduct a demonstration before the jury using a mannequin dressed in the complainant's clothing. We affirm.

## Facts

On the night of September 15, 2001, appellant shot V. Rosas–Sanches, the complainant, in the abdomen and groin area with a sawed-off double-barrel shotgun. Appellant and the complainant had a history of verbal and physical disputes at the Sycamore Inn bar. On that night, the two men got into an argument in the restroom, and the complainant showed appellant the butt of a knife. Appellant ran to his car, removed a double-barrel shotgun from the trunk, loaded the shotgun, pulled both triggers as the complainant walked toward him, and attempted to reload the shotgun. At the time of the shooting, nobody, including appellant, saw a knife in the complainant's hand, and appellant had the opportunity to leave, either by walking or driving away. Moreover, several individuals attempted to stop appellant from using his gun.

## Mannequin Demonstration

In his sole point of error, appellant asserts that the trial court erred by allowing the State to conduct a demonstration before the jury using a mannequin dressed in the complainant's bloody clothes over the objection that such evidence was not relevant and that the danger of its unfair prejudice outweighed any probative value that it had.

## A. Factual Setting

During the prosecutor's direct examination of Sealy Police Department Sergeant Detective Andrew Weido, the prosecutor asked that the complainant's jeans and shirt be marked as State's Exhibits. Counsel for appellant asked to approach the bench, where the following transpired:

> Defense: My objection is to put a dummy, I guess in some somebody's clothes, and I guess trying to explain using that dummy, I think it's, first of

all, I don't think it's relevant. Number Two, I think any probative value, if any, is outweighed by the danger of unfair prejudice.

The Court: What is the prejudice?

Defense: The prejudice is, is that the jury is going to be sitting up there looking at a dummy in this, in this man's clothes. I assume that is what they are saying, these are this guy's clothes.

Prosecutor: We are going to talk about where he has been shot, and you can't just have these kinds of clothes laying [sic] on the ground and explain where the bullet holes went in. It's important to show—

The Court: Objection is overruled.

## B. The Law

■■■ Evidence that tends to make the existence of a consequential fact more or less probable is considered relevant, and all relevant evidence is generally admissible. Tex.R. Evid. 401; *see Rankin v. State,* 974 S.W.2d 707, 719 (Tex.Crim.App. 1998) (op. on reh'g); *Goldberg v. State,* 95 S.W.3d 345, 366 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd.). However, relevant evidence may be excluded when the danger of unfair prejudice substantially outweighs its probative value. Tex.R. Evid. 403; *see Goldberg,* 95 S.W.3d at 375. The party opposing admissibility bears the burden of showing that the unfair prejudice substantially outweighs the evidence's probative value. *Goldberg,* 95 S.W.3d at 367. The decision of whether or not to admit evidence lies within the discretion of the trial court, and the presumption is that relevant evidence is more probative than prejudicial. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979); *Howland v. State,* 966 S.W.2d 98, 103 (Tex.App.-Hous-

ton [1st Dist.] 1998), *aff'd on other grounds,* 990 S.W.2d 274 (Tex.Crim.App. 1999).

## C. Standard of Review

■■■ When deciding whether a trial court erred in admitting evidence that was either irrelevant or prejudicial, we review the trial court's decision for abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 378–79 (Tex. Crim.App.1990) (op. on reh'g); *Goldberg,* 95 S.W.3d at 366. A trial court abuses its discretion when it acts outside of the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Goldberg,* 95 S.W.3d at 366. We affirm the ruling so long as the trial court followed "the appropriate analysis and balancing factors, though the appellate court might disagree with the weight given to those individual factors." *Montgomery,* 810 S.W.2d at 380.

## D. Probative Value Versus Unfair Prejudice

■■■ Appellant offers no argument on appeal[1] as to why the use of the mannequin was not relevant. Instead, appellant presents the following argument:

In the case at bar the state's use of a dummy, that is not proportional to the accused, dressed in the bloody clothes, is unduly prejudicial to the appellant's case. Such prejudice outweighs any probative value. It begs the jury to imagine that that is the complainant standing there. *It falsely represents the defendant who was at least 275 pounds according to the medical examiner and his autopsy report. The image burned in the jury's mind is not that of a 275 pound complainant facing Mr. Runnels who weighs over a hundred pounds, less*

1. Appellant likewise made no argument at trial regarding relevance.

*but one of a smaller complainant. Considering the fact that the appellant was arguing self-defense, this demonstration using the dummy was extremely prejudicial to the appellant's case. [sic passim]*

(Emphasis added.) Although appellant's brief is confusing in its intermittent mistaken use of "accused" and "defendant" for "complainant," the gist of appellant's complaint on appeal is that appellant was prejudiced because the mannequin led the jurors to believe that the complainant was small, when, in fact, he weighed 275 pounds. Appellant claims that his self-defense theory was thereby undermined.

■ We notice, however, that appellant's only objection at trial was that he was prejudiced *because the jury would be looking at a dummy in the complainant's clothes.* Under these circumstances, the trial court was not alerted to appellant's complaint on appeal that he was prejudiced *because the mannequin was smaller than the 275–pound complainant to such an extent that it would undermine his self-defense theory.* When the appellate complaint fails to comport with the trial objection, nothing is preserved for review. *Foster v. State,* 874 S.W.2d 286, 289 (Tex. App.-Fort Worth 1994, pet. ref'd); *Beasley v. State,* 810 S.W.2d 838, 841 (Tex.App.-Fort Worth 1991, pet. ref'd).

The reason for requiring the same objection at trial is to give the trial court the opportunity to rule on that particular legal theory and to give the State the opportunity to remove the objection. *Cook v. State,* 858 S.W.2d 467, 474 (Tex.Crim.App.1993). Here, the trial court had no way of foreseeing that appellant would one day complain about the failure of the mannequin to be the same size as the complainant. To allow appellant to raise such a new argument on appeal would blindside the trial court, which we are not inclined to do. *See*

*id. But see Wilson v. State,* 879 S.W.2d 309, 312 (Tex.App.-Amarillo 1994, no pet.) (despite acknowledging State was technically correct that error was not preserved because complaints at trial and on appeal did not comport, nevertheless addressing argument that appellant had expressly waived at trial because both complaints generally related to same area of rules of evidence), *abrogated on other grounds by Clewis v. State,* 922 S.W.2d 126 (Tex.Crim. App.1996). It would be particularly inappropriate to blindside the trial court in this case because the trial court properly listened to both appellant's argument regarding prejudice and the State's argument regarding probative value before making a ruling. Moreover, the State had no opportunity below to remove the claim of prejudice, presented for the first time on appeal, based on there being a difference in size between the mannequin and the complainant.

We hold that appellant's objection at trial, that the jury would be prejudiced by viewing a mannequin dressed in the complainant's clothes, does not comport with appellant's complaint on appeal, that his self-defense theory was undermined by portraying the complainant with a mannequin much smaller than the complainant's 275–pound frame. Therefore, appellant did not preserve his appellate complaint for review.

Accordingly, we overrule appellant's sole point of error.

### E. Response to the Concurring Opinion

We write further to explain our disagreement with three aspects of the concurring opinion.

First, in reaching its conclusion that appellant's challenge was not waived, the concurring opinion sets out excerpts from

the record of matters either that occurred after the trial court's ruling or that were simply unrelated to the issue of the propriety of the mannequin exhibit's admission. Had all of those arguments and information concerned the propriety of the mannequin exhibit's admission—and had they further either been before the trial court when it ruled or been the subject of a renewed objection by appellant after their presentation[2]—we might then be faced with a different situation. But those things did not happen here. Absent fundamental error, which no ones argues that this is, we cannot reverse a trial court on grounds that were not presented to it *at the time that it was asked to rule. See* TEX.R.APP. P. 33.1(a). To do so would truly be unfair to the court and would be tantamount to requiring the court to read the future.

Second, the concurring opinion posits that "[n]either Rule of Evidence 403 nor the case law explicating its requirements holds that a defendant must spell out in his objection exactly how a demonstration is too dissimilar from the actual circumstances to constitute an abuse of discretion" and that a defendant need not "spell out exactly how the admission of evidence is more prejudicial than probative on pain of waiving error." We do not necessarily disagree with this proposition, as far as it states a general rule. Nonetheless, we disagree with it in this case. Here, whether he was required to do so or not *in the abstract,* appellant *actually did* spell out how the evidence was more prejudicial than probative—specifically, that the jury would be looking at a dummy in the complainant's clothes. Once an appellant affirmatively limits his objection in the trial court to a narrow basis, he cannot expand on that basis for the first time on appeal. *Cf. Shelling v. State,* 52 S.W.3d 213, 217–18 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (holding that appellant waived complaint that trial court erred in overruling objection to voir dire questions concerning O.J. Simpson trial because that case was racially polarizing when trial objection had been only that defense counsel was "going to object to the reference to the O.J. verdict as it relates to homicide cases as it indirectly relates to this defendant, myself or cocounsel."); *cf. also Bell v. State,* 938 S.W.2d 35, 47–48 (Tex.Crim.App.1996) ("But at both trials, appellant limited his objections to the issue of his illegal arrest only and the effect of that arrest on his confession. Appellant now raises the issue of a possibly illegal search and seizure, for the first time, in his brief on appeal. Appellant has not preserved this claim because he failed to raise it at either trial."). Allowing an appellant to do so *does* blind-

---

**2.** The concurring opinion appears to imply that the court's later denial of appellant's request to admit the mannequin into evidence during the State's direct examination might somehow be considered sufficient to preserve appellant's appellate challenge. To the extent that the concurring opinion implies this, we reject that conclusion for two reasons. First, appellant's above-mentioned request was only to admit the mannequin into evidence. That request simply cannot be construed as an objection that appellant was prejudiced because the mannequin was smaller than the 275–pound complainant to such an extent that it would undermine his self-defense theory. Second, the trial court did not prevent appellant from requesting that the mannequin be admitted into evidence. Instead, as the discussion quoted in the concurring opinion plainly shows, the court indicated that appellant could offer the mannequin into evidence if he wished through his own witnesses, but that he could not require the State to offer it in its direct examination. The court did not fully and finally "cut defense counsel off" from offering the mannequin at any time. And we note that, rather than offering the mannequin into evidence after the State had finished its examination, appellant chose instead to describe (and to allow the State to describe) the mannequin verbally for the record.

side the trial court, which has a right to rely on an appellant's affirmative statement that he is limiting his complaint to one basis among many potential bases applicable to a given objection.

Third, the concurring opinion states:

Nor could appellant's counsel have objected with the specificity that the majority requires because the trial court, having heard briefly why the defense considered itself prejudiced and why the State wanted the clothing to be displayed on the mannequin, cut both defense counsel and the prosecution off before anything else could be said; and it similarly cut defense counsel off when he subsequently tried to introduce the mannequin into evidence during the State's examination. Clearly, the court did not think that it needed more of an explanation before overruling the defense's objection and allowing the demonstrative evidence.

The pertinent discussion shows, however, that if the trial court cut off anyone, that entity was the State, not also appellant.[3] Moreover, nothing shows that appellant at that time had more to add to his objection or that, even assuming that he did (something that we cannot know without pure speculation), the trial court precluded his doing so. A trial court's premature ruling alone does not relieve an appellant from stating his full objection. Rather, if a trial

court rules prematurely (which, again, nothing here indicates that it did), the appellant has the duty to advise the court that he has further objections to make—and, if the court disallows further objections, to object to *that* ruling. *See* Tex. R.App. P. 33.1(a)(1), (2); *cf. Carter v. State,* 717 S.W.2d 60, 72, 76 (Tex.Crim. App.1986) (noting, "The court sustained the challenge for cause by the State. Appellant's counsel did not ask for additional interrogation or object that the excusal was premature as now urged[,]" and further noting, "According to appellant[,] Bryant is 'a classic example of the vacillating juror who finally concludes she is undecided and is then prematurely excluded for cause.' ... The appellant did not ask for additional time to interrogate, though he now insists the exclusion was premature."). Simply put, nothing here shows that the trial court "cut ... off" appellant, that appellant had more to add to his objection at the time at which he asked for a ruling, or that appellant could not have objected because he was prevented from doing so by the trial court.

## Conclusion

We affirm the judgment of the trial court.

Justice KEYES, concurring.

3. During its direct examination of Sergeant Weido, the State offered in evidence the decedent's jeans and sweatshirt displayed on a mannequin. Appellant objected that having the mannequin dressed in appellant's clothes was more prejudicial than probative. Appellant then explained:

My objection is to put a dummy, I guess in some somebody's clothes, and I guess trying to explain using that dummy, I think it's, first of all, I don't think it's relevant. Number Two, I think any probative value, if any, is outweighed by the danger of unfair prejudice.

When the trial court asked how the dummy was prejudicial, appellant's counsel replied, "[T]he jury is going to be sitting up there looking at a dummy in this, in this man's clothes." Before the State could then finish *its* response that "[w]e are going to talk about where he has been shot, and you can't just have these kinds of clothes laying [sic] on the ground and explain where the bullet holes went in. It's important to show—," the trial court overruled the objection.

EVELYN V. KEYES, Justice, concurring.

Because I strongly believe the majority misapplies the law of waiver to this case and because this case presents an important issue of first impression regarding the State's demonstrative use of a mannequin wearing the complainant's bloody shirt, I respectfully concur in the judgment only.

## Waiver

The majority holds that appellant's objection at trial did not comport with his objection on appeal, that the trial court was not alerted to appellant's complaint on appeal, and that appellant, therefore, failed to preserve his objection to the State's use of the mannequin. I strongly disagree. In my view, appellant clearly alerted the trial court both to his objection to the demonstrative evidence as so dissimilar from the actual circumstances as to constitute an abuse of discretion and to his objection as to its irrelevance and prejudicial effect on the jury. That appellant's objection was not well-founded says nothing about the sufficiency of the objection to preserve error.

During its direct examination of Sergeant Weido, the State offered in evidence the decedent's jeans and sweatshirt displayed on the mannequin. Appellant objected that having the mannequin dressed in appellant's clothes was more prejudicial than probative. The record states:

My objection is to put a dummy, I guess in some somebody's clothes, and I guess trying to explain using that dummy, I think it's, first of all, I don't think it's relevant. Number Two, I think any probative value, if any, is outweighed by the danger of unfair prejudice.

When the trial court asked how the dummy was prejudicial, appellant's counsel replied, "[T]he jury is going to be sitting up there looking at a dummy in this, in this man's clothes." Before the State could finish its response that "[w]e are going to talk about where he has been shot, and you can't just have these kinds of clothes laying on the ground and explain where the bullet holes went in. It's important to show—," the trial court overruled the objection.

The State then continued its examination of the detective regarding State's exhibits 17 and 18—the blue jeans and sweatshirt displayed on the mannequin "that were cut off, evidently by EMS" and had been recovered from the scene. As the examination continued, defense counsel asked to take the witness on voir dire, determined that he had recovered the clothing himself from the scene, and then asked that the mannequin also be marked as an exhibit. The State refused, and defense counsel asked to approach the bench, where this exchange ensued:

> [DEFENSE COUNSEL]: Judge, what I am concerned about is in the event that, I hope doesn't happen, but if this case goes to appeal, they are not going to have any idea of what—
>
> [COURT]: Did you hear what I said? The state may offer it if they wish. If they choose not to, they don't have to. If you wish to offer it, you may.

The court then admonished defense counsel that he could try to offer the evidence through his own witness. After the State had dismissed the witness, and the jury had been dismissed for lunch, defense counsel tried again, stating:

> [DEFENSE COUNSEL]: Your Honor, I would request that the record reflect that during the entire time of Sergeant Weido's testimony, the mannequin wearing Mr. Sanchez' clothes has been sitting in front of the jury, that was used for demonstration purposes.

[COURT]: Yes. It has been there since the Court admitted it.

[PROSECUTOR]: Your Honor, may we add something else for the record?

[COURT]: Yes.

[PROSECUTOR]: May we let the record reflect that is a mannequin of about five foot tall that is sitting on a piece of about one foot square glass with a half inch square rod supporting the mannequin with a board, a board about, a two by two piece of board sticking out the top. That it has a pair of brownish looking boots, and also a gray sweat suit underneath it, which we will stipulate has nothing to do with the case, just part of the mannequin.

[COURT]: Okay.

[PROSECUTOR]: Mannequin has no head. And we would be willing to photograph, taken after the clothes are removed from it, if counsel would like to have that, to have that included in the record.

[DEFENSE COUNSEL]: Judge, I would like to have a photo taken of it as it is to be admitted into the record.

On cross-examination, defense counsel established that when Weido arrived on the scene, the clothing had already been cut off of the decedent and the decedent's body had been removed. On cross-examination of those witnesses who had seen the shooting, defense counsel established that the decedent was a big man, that he had been harassing the much smaller appellant during the day, that he was very intoxicated, and that he had been moving towards appellant when he was shot.

The majority finds none of these efforts to be sufficient to put the trial court on notice that appellant's counsel objected to the use of the mannequin as demonstrative evidence because of discrepancies between the actual circumstances of the crime and the prejudicial effect on the jury of a headless mannequin in the decedent's bloody clothing seated before the jury throughout Detective Weido's testimony. To my mind, the standard the majority sets for stating an objection to the use of demonstrative evidence as prejudicial is too high. Neither Rule of Evidence 403 nor the case law explicating its requirements holds that a defendant must spell out in his objection exactly how a demonstration is too dissimilar from the actual circumstances to constitute an abuse of discretion. Nor must he spell out exactly how the admission of evidence is more prejudicial than probative on pain of waiving error. Rather, the Court of Criminal Appeals has consistently held that such technicality is *not* required to preserve error.

In *Ex Parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App.1994), the Court of Criminal Appeals stated, "The purpose of an objection is twofold: (1) to notify the trial judge and the State of the complaint, and (2) to preserve a complaint for appellate review." *Id.* at 65 (internal citations omitted). The court continued, "We have acknowledged that with regards to objections 'there are no technical considerations or form of words to be used. Straightforward communication in plain English will always suffice.'" *Id.* (quoting *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App. 1992)). Thus, "an objection may be phrased in any manner which sufficiently appraises the trial judge and opposing counsel of the nature of the complaint." *Id.* The court noted,

The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. *As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly*

*enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.* Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

*Id.* at 65 n. 3 (quoting *Lankston,* 827 S.W.2d at 909) (emphasis added).

The record demonstrates that both the trial court and the State understood that the defense did not want the jury to be facing the decedent's bloody and cut-up clothes displayed on a still, five foot tall, headless mannequin when appellant's defense of self-defense—or, indeed, conviction on the lesser included offense of manslaughter—depended on defense counsel's ability to persuade the jury that appellant was in fear of his life from the much larger, threatening decedent moving towards him at the time appellant shot him. Under the circumstances of the trial, defense counsel's objection to the details about the mannequin, coming as soon as the State placed the mannequin before the jury, is, in my opinion, clearly sufficient to preserve appellant's objection that the mannequin was irrelevant and prejudicial to his case. *See Cantu v. State,* 738 S.W.2d 249, 254 (Tex.Crim.App.1987), *cert. denied sub nom, Cantu v. Collins,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993) (addressing merits following objection that testimony of witness who displayed wounds to jury was "inflammatory, prejudicial and introduced evidence of an extraneous charge"); *Lewis v. State,* 486 S.W.2d 104, 106 (Tex.Crim.App.1972) (addressing merits following objection to suspending rule to allow witness to observe subjective

demonstration by another witness and "'permitting the medical expert to respond to hypothesis not in evidence and to base conclusions thereon as well as on speculative, subjective demonstrations by another witness'"); *Stembridge v. State,* 94 Tex. Crim. 207, 250 S.W. 180, 181 (1923) (addressing merits and finding objections that bedstead and bedclothing were not identical to those at homicide scene to be without merit where State's effort "was to get before the jury the exact conditions as to the location of the body upon the bed and the arrangement of the bedclothing at the time the body was discovered, for the purpose of showing the incorrectness of appellant's testimony;" likewise, finding no error in trial court's permitting physician to testify as to location of wounds and range of bullets and to demonstrate this on person of prosecuting officer by having him lie down in jury's presence).

Nor could appellant's counsel have objected with the specificity that the majority requires because the trial court, having heard briefly why the defense considered itself prejudiced and why the State wanted the clothing to be displayed on the mannequin, cut both defense counsel and the prosecution off before anything else could be said; and it similarly cut defense counsel off when he subsequently tried to introduce the mannequin into evidence during the State's examination. Clearly, the court did not think that it needed more of an explanation before overruling the defense's objection and allowing the demonstrative evidence.

### Admissibility of Evidence

Because I would hold that appellant sufficiently preserved his complaint for appeal, I would determine whether the trial court erred in allowing the State to use a mannequin dressed in the decedent's clothing to show where the decedent had

been shot. In his first point of error, appellant asserts that the trial court erred by allowing the State to use the mannequin over the objections that there were differences between the mannequin and the actual circumstances, that such demonstrative evidence was not relevant, and that the danger of prejudice outweighed any probative value the evidence might have.[1] Appellant contends that the use of the small mannequin could have caused the jury to perceive the dispute as between a small decedent and appellant, rather than an altercation between a 275–pound decedent and appellant.

## A. Use of Demonstrative Evidence

Appellant contends that this is a case of first impression because there are no cases regarding the admissibility of mannequins in trial. However, there is a well-developed line of cases regarding demonstrations. *See Lewis,* 486 S.W.2d at 106 (It is proper to permit the witness "to demonstrate before the jury as to make more plain and clear her testimony"); *Rogers v. State,* 756 S.W.2d 332, 336 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd) ("Texas law has long permitted courtroom demonstrations aimed at clarifying a witness's testimony."). The trial court has discretion as to whether or not to permit demonstrations. *Ginther v. State,* 672 S.W.2d 475, 477 (Tex.Crim.App.1984). The conditions must be similar, but need not be identical to actual events, since dissimilarities affect the weight, not the admissibility of the evidence. *Cantu,* 738 S.W.2d at 254.

In trial, the State asserted that it wished to use the mannequin to establish where the decedent had been shot, and it stated that laying the clothing on the ground would be insufficient. Also, the State used the evidence to show the distance between appellant and the decedent when the gun was fired. The complainant's own shirt was displayed on the mannequin for the purpose of demonstrating to the jury where the bullets entered his body and the distance from which they were fired. Texas law has long held that such a demonstration may be proper. *See Cantu,* 738 S.W.2d at 254 (surviving witness's testimony that he was shot nine times during commission of crime and showing his chest to jury, displaying wounds thereon, was redundant of proper testimony describing them as part of contest of offense of capital murder and thus was information properly before jury); *Stembridge,* 94 Tex. Crim. 207, 250 S.W. at 181 (in prosecution for murder by shooting, permitting physician to testify as to location of deceased's wounds and range of bullets, and to demonstrate this on person of one of prosecuting officers by having him lie down in presence of jury was not error). There is nothing to indicate that the use of a mannequin for the purpose to which it was put here was intrinsically improper.

## B. Relevance and Prejudice

Appellant contends, however, that the disputed evidence was not relevant to the trial, although he offers no argument or evidence as to why it was not relevant. Evidence that tends to make the existence of a consequential fact more or less probable is considered relevant, and all relevant evidence is generally admissible. Tex.R. Evid. 401. Considering that appellant argued self-defense, a reasonable trial court could have decided that showing the dis-

---

**1.** Texas Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403.

tance between the two men was useful in determining whether deadly force was necessary. Because it could have determined that such demonstrative evidence tended to make the existence of a consequential fact more or less probable, the trial court could have considered the mannequin relevant evidence. *See Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Crim.App.1981). Thus, the trial court did not act outside of the zone of reasonable disagreement in impliedly finding the demonstrative evidence relevant.

Appellant also argues, however, that, even if relevant, the display of the complainant's shirt on a small headless mannequin was unduly prejudicial. Evidence is unfairly prejudicial if it has "a tendency to suggest decision on an improper basis." *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1991). A Rule 403 analysis to determine unfair prejudice requires the trial court to balance (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in an irrational but indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State,* 144 S.W.3d 487, 489 (Tex. Crim.App.2004); *Howland v. State,* 966 S.W.2d 98, 103 (Tex.App.-Houston [1st Dist.] 1998), *aff'd,* 990 S.W.2d 274 (Tex. Crim.App.1999), *cert. denied sub nom, Howland v. Texas,* 528 U.S. 887, 120 S.Ct. 207, 145 L.Ed.2d 174 (1999); *see also Wright v. State,* 178 S.W.3d 905, 919 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (probative value of state's in-court demonstration showing its theory as to how defendant allegedly murdered her husband substantially outweighed danger of unfair prejudice, confusion of issues or misleading jury when all parts of demonstration were supported by and consistent with testimony based on personal observations and deductions from facts in evidence). Relevant evidence is presumptively more probative than prejudicial. *Howland,* 966 S.W.2d at 103. The trial court's decision is reviewed for abuse of discretion. *Cantu,* 738 S.W.2d at 255.

Here, the trial court inquired into the purpose and prejudice of the evidence before cutting the State off before it could explain why using the mannequin was important and overruling the defense's objection to its use. The record does not have to include the logic behind the balancing test used by the trial court to determine that evidence is more prejudicial than probative under rule 403; nor does it even have to mention that one was conducted. *See Howland,* 966 S.W.2d at 103 ("The trial court must perform a rule 403 balancing test if requested. However, it need not conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test."). Because the trial court overruled the rule 403 objection, we may presume that the balancing test occurred. *See id.* Furthermore, photographs of the decedent were also admitted into evidence, there was testimony as to the actual circumstances, and appellant's counsel mentioned the weight and height of the decedent on multiple occasions. The trial court could thus have concluded that, in light of this additional evidence, the mannequin would not have placed a false image into the jury's mind as to the size of the decedent and would not have substantially prejudiced appellant. Because the trial court impliedly conducted the appropriate test, and because its decision to allow the evidence did not fall outside of the zone of disagreement, I would hold that the trial court did not abuse its discretion in admitting the evidence.

### Conclusion

For the foregoing reasons, I do not agree with the majority that appellant's

brief on appeal "blindsides" the trial court. Nor do I agree that the *trial court's* rights are at stake in this appeal. Rather, it is *appellant's* right to a fair trial—and appellant's right to a full and fair review of the trial court's errors, if any—that is at issue. I would hold that appellant preserved his objection to the State's use of demonstrative evidence and his Rule 403 objection, even though I would also hold that the trial court was within its discretion in overruling appellant's objections to the mannequin.

I would overrule appellant's first point of error on its merits.

I respectfully concur in the judgment only.