Opinion issued March 22,
2012.



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-10-00926-CR

———————————

Brian Douglas Hill, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 208th District Court

Harris County, Texas



Trial Court Case No. 1238827

 



 

MEMORANDUM OPINION

 

Appellant
Brian Douglas Hill was charged by indictment with assault of a person with whom
he had a dating relationship.  Tex. Penal Code 
§ 22.01(b)(2)(A)
(West 2011).  The jury found him guilty, found
true two enhancements, and sentenced him to twenty-five years in prison.  On appeal, Hill contends that the evidence
was insufficient to prove there was a “dating relationship” between him and the
complainant and that the trial court erred in prohibiting impeachment of the
complainant through a witness who would have testified about the complainant’s
criminal history.  We affirm.

Background

          On July 31, 2009, Renee
Williams stopped at a gas station food mart to use the ATM.  Williams testified that she saw the complainant,
Carolyn Lewis, run into the store.  Lewis
appeared to be covered in mud and blood and was begging for help.  Hill ran into the store after Lewis,
demanding her purse and a card.  When Lewis
refused to give him her purse, Hill punched her in the face, causing her to
slide across the store’s floor.  Williams
saw Hill punch Lewis a second time. 
Williams called 911 from her car. 
According to Williams, when she asked Lewis who had hit her, Lewis told
Williams that it was her boyfriend.

          Officers
C. Bradshaw and H. Ceo of the Houston Police Department also testified.  Bradshaw testified that she and Ceo reported
to the scene a few moments after receiving Williams’s 911 call.  Ceo testified that when she spoke with Lewis,
Lewis told her that Hill had hit her with his closed fist seven times at
various locations, including the gas station and street.  Lewis told Ceo that she and Hill had previously
been together “relationally.”  Ceo thought
this meant “that they had been intimate together.  Boyfriend and girlfriend.”

Officer Lee Berry also testified
for the State.  Berry first spoke with
Lewis the day after the incident on August 1, 2009.  Lewis told him that she had been assaulted by
her ex-boyfriend, Hill.  Lewis also said
Hill had taken her social security debit card. 
According to Berry, both Williams and Avelino Fernandez, a clerk at the food
mart, identified Hill in separate photo line ups. 

The State also offered the
testimony of Deputy J. Ortiz, who confirmed that after comparing fingerprints
taken from Hill with those on a jail card, Hill was the same Brian Douglas Hill
who pleaded guilty to a 2008 assault of a family member charge.  At the close of its case, the State read Lewis’s
medical records to the jury, including the EMS report and hospital records from
this assault.  Both sets of records referred
to Hill as Lewis’s boyfriend.  

Hill testified at trial, admitting
that he was with Lewis on the day of the incident but offering a version of
events that differed from Lewis’s claims. 
According to Hill, Lewis purchased a beer and cigar for each of them and
they went for a walk.  As they walked
towards the gas station he and Lewis began to argue about various things,
including his new relationship with another woman.  Hill testified that the card that Williams
said he demanded from Lewis was actually a Chase bank card with his name on it
and not Lewis’s card.  Hill initially
denied having physical contact with Lewis before she ran into the food mart, but
he later admitted that he may have pushed her off of him at one point during
their walk.  Hill also claimed that the
only contact he had with Lewis inside the food mart was that they wrestled as he tried to recover his
Chase bank card.  Hill later admitted
that he did hit Lewis when they were inside of the food mart, but explained
that she was hitting him and he had to defend himself by hitting her back. 

Hill confirmed that he and Lewis
lived together from 2006 until 2007.  In
addition, he admitted that they had lived together for three days in 2008 after
they had been evicted from their apartment and Lewis had moved in with her
daughter.  About their relationship, Hill
testified that he “could say [he] was in a relationship with her a year and a
half where, [they] lived together,” but since then he went his way and “she
went her way” and they were no longer together. 
Hill offered conflicting testimony as to the date of their breakup.  He initially testified that they had broken
up the year before the incident, and later said that they had separated only a
month before the incident.  

Sufficiency of the evidence to show a dating relationship

In his first issue, Hill argues
that the evidence presented at trial was insufficient for a rational jury to
have found beyond a reasonable doubt that Hill and Lewis had a dating
relationship as defined by Texas Family Code section 71.0021(b).  Tex. Fam.
Code. Ann. §
71.0021(b) (West 2009).   

A.   Standard of Review

“Evidence is insufficient to
support a conviction if considering all record evidence in the light most
favorable to the verdict, a factfinder could not have rationally found that
each essential element of the charged offense was proven beyond a reasonable
doubt.”  Gonzalez v. State, 337 S.W.3d 473, 478 (Tex. 
App.—Houston [1st Dist.] 2011, pet.
ref’d) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).  An appellate court “determine[s] whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.”  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)
(quoting Hooper v. State, 214 S.W.3d
9, 16–17 (Tex. Crim. App. 2007)).  When
the record supports conflicting inferences, an appellate court presumes that
the factfinder resolved the conflicts in favor of the verdict and defers to
that resolution.  Id. (citing Jackson, 443
U.S. at 326, 99 S. Ct. at 2793).  “An
appellate court likewise defers to the factfinder’s evaluation of the
credibility of the evidence and weight to give the evidence.”  Gonzalez,
337 S.W.3d at 479.  In viewing the
record, a court treats direct and circumstantial evidence equally:
circumstantial evidence can be as probative as direct evidence, and
“circumstantial evidence alone can be sufficient to establish guilt.”  Clayton,
235 S.W.3d at 778 (quoting Hooper,
214 S.W.3d at 13).

B.   Applicable Law

A person commits assault by
intentionally, knowingly, or recklessly causing bodily injury to another person.  Tex. Penal Code Ann. § 22.01(a)(1).  The assault becomes a third degree
felony if it is committed against someone whose relationship with the defendant
constitutes a “dating relationship” and the defendant has a previous conviction
for family violence.  Tex. Penal Code Ann. 
§ 22.01(b)(2).  A
dating relationship is “a relationship between individuals who have
or have had a continuing relationship of a romantic or intimate nature.”  Tex.
Fam. Code Ann. § 71.0021(b). 
The existence of a dating relationship is determined based on
consideration of: (1) the length of the relationship, (2) the nature of the
relationship, and (3) the frequency and type of interaction between the persons
involved in the relationship.  Id.  “A casual acquaintanceship or ordinary
fraternization in a business or social context does not constitute a dating relationship.”  Id. at § 71.0021(c).

C.   Analysis

Hill does not dispute that the
evidence was sufficient for the jury to find that he assaulted Lewis and had a
previous family violence conviction. 
Hill argues only that the evidence was insufficient to prove that Hill
and Lewis had a dating relationship as defined by Texas Family Code section
71.0021(b).  Specifically, Hill contends that
the State was required to prove beyond a reasonable doubt that the relationship
between Hill and Lewis was ongoing at the time of the incident.  Hill further argues that because there is no
evidence concerning the time of their breakup, the evidence was insufficient
for a jury to find that a dating relationship existed at the time of the
incident.  See Tex. Fam. Code Ann.
§ 71.0021(b).

In order to prove Hill and Lewis
had the required “dating relationship” the State had to demonstrate beyond a
reasonable doubt that theirs was “a relationship between individuals who have
or have had a continuing relationship of a romantic or intimate nature.”  The charge stated, consistent with the
language of the Family Code, that the existence of the dating relationship
should be determined based on the length and nature of the relationship as well
as “the frequency and type of interaction between the persons involved in the
relationship.”

The jury was thus permitted to find
that Hill and Lewis had a dating relationship if it found that Hill and Lewis
(1) have a continuing relationship of
a romantic or intimate nature or (2) have
had a continuing relationship of a romantic or intimate nature.  Hill contends that the use of the term
“continuing relationship” means that only a relationship that is continuing or
ongoing at the time of the assault
satisfies the statute.  We reject Hill’s
interpretation of the statute because construing “continuing relationship” as
he urges would render the words “have had” meaningless.  We conclude that the inclusion of the words “have
had” permitted the jury to find that a dating relationship existed if it found
that Hill and Lewis had a continuing relationship of a romantic or intimate
nature in the past, regardless of whether that relationship was ongoing at the
time of the assault.  Tex. Fam. Code Ann. § 71.0021(b); see
White v. State, No. 05-09-00112-CR, 2010 WL 2951748 at *2 (Tex. App.—Dallas July 29, 2010, pet. ref’d) (mem. op.,
not designated for publication) (evidence sufficient to show dating
relationship where evidence showed complainant and appellant had dated but had
broken up before assault).

Having concluded that the State was
not required to prove that Hill and Lewis’s romantic or intimate relationship
was ongoing at the time of the assault, we now address whether the evidence was
sufficient for a jury to have found beyond a reasonable doubt that Hill and
Lewis had a continuing relationship of a romantic or intimate nature before the
assault.  Williams testified that Lewis
referred to her assailant, Hill, as her “boyfriend.” Lewis’s medical records
and EMS report, which were read to the jury, described Lewis’s assailant as her
boyfriend.  Officer Ceo testified that Lewis
told her that she and Hill had previously been together “relationally” and that
Ceo took that to mean they were “intimate together” and “[b]oyfriend and
girlfriend.”  Officer Berry testified
that when he interviewed Lewis the day after the incident, she told him that
she had been hit by her “ex-boyfriend.” 
In addition, Hill admitted that he had lived with Lewis from the end of
2006 until the end of 2007 and for a few days in 2008.  When questioned about how long it had been
since the relationship had ended, Hill offered conflicting testimony, stating
once that they “broke up last year” and later that it had been “probably about
a month, probably” since their break up.[1]

Given the testimony concerning the
length and nature of the relationship we conclude that there was sufficient
evidence for a rational jury to find beyond a reasonable doubt that Lewis and
Hill had a dating relationship as defined by the Texas Family Code.  Villareal
v. State, 286 S.W.3d 321, 324 (Tex. Crim. App. 2009) (evidence sufficient to show dating relationship where defendant
and complainant spent night at each other’s residences and had dated only about
one month); see Caballero v. State, No.
03-09-00473-CR, 2010 WL 2133927 at *4 (Tex. App.—Austin May 28, 2010, pet. dism’d) (mem. op., not designated for
publication) (although evidence showed complainant dated other men, evidence
sufficient to show dating relationship where jury could believe complainant’s
testimony that relationship lasted eight months, and evidence showed they lived
together at campsite).

We overrule Hill’s first issue.

 

 

Impeachment Evidence 

In his second issue, Hill argues
that the trial court erred by prohibiting Hill from offering evidence of Lewis’s
criminal history to impeach Lewis, who did not testify at trial, but whose hearsay
statements were admitted through other witnesses.  See Tex. R. Evid.
806.

A.   Standard of Review

We review a trial court’s decision
to admit or exclude evidence under an abuse of discretion standard.  Martinez
v. State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), cert. denied, 131 S. Ct. 2966 (2011); Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court abuses its discretion if its
determination “lies outside the zone of reasonable disagreement.”  Martinez,
327 S.W.3d at 736.

B.   Applicable Law

When hearsay has been admitted, the
declarant’s credibility may be attacked through any evidence which would be
admissible if he had testified.  Tex. R. Evid. 806.  To attack the credibility of a witness,
evidence that he has been convicted of a felony or crime of moral turpitude shall
be admitted if elicited through the witness or by public record, and the court determines
the probative value outweighs its prejudicial effect.  Tex. R. Evid. 609.  The proponent of the evidence must
show the evidence is admissible.  Arnold v. State, 36 S.W.3d 542, 546 (Tex.
App.—Tyler 2000, pet. ref’d); see Davis v. State, 791 S.W.2d 308, 310
(Tex. App.—Corpus Christi 1990, pet. ref’d) (proponent
must show evidence is competent before using evidence for impeachment).

C.   Analysis

During
cross-examination, Hill’s counsel questioned Officer Berry about his
investigation of the assault.  Berry
testified that he ran criminal histories on all of the parties involved,
including Lewis.  Hill’s attorney then asked
Berry whether there had been any “hits” when he ran Lewis’s criminal
history.  Before Berry could answer, the
State objected to the question on the ground of relevance.  At the bench, the judge questioned Hill’s attorney about the relevance of
Berry’s testimony:

Hill’s Counsel: It’s mostly thefts and
there’s also another one; but they’re crimes against moral turpitude.

 

The Court: Okay.  Can you impeach someone who’s [sic] was going
to testify?

 

Hill’s Counsel: I just asked
him if there was [sic] hits.  That’s why
I didn’t go into it.

 

The Court: Well, you knew
that he could possibly say yes and run off the mouth the rest of it, too,
because he wasn’t instructed.

 

Hill’s Counsel: Okay.  But I wasn’t going to ask anything.

 

The trial court sustained
the State’s objection to relevance and Hill’s attorney continued questioning
Berry about his investigation.

To preserve
error for review, the record must show that the complaining party gave the
trial court an opportunity to rule on the complaint by presenting that
complaint to the trial court in a specific and timely objection.  See Tex. R. App. P. 33.1; Geuder v. State, 115 S.W.3d 11, 13 (Tex.
Crim. App. 2003); Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); Runnels v. State, 193 S.W.3d 105, 108 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (“When the appellate
complaint fails to comport with the trial objection, nothing is preserved for
review.”).  Here, Hill did not argue to
the trial court that Lewis’s criminal history was admissible under Texas Rule
of Evidence 806 or any other rule of evidence. 
When questioned by the trial court about the admissibility of the
evidence, Hill’s attorney stated that he “wasn’t going to ask anything.” Hill
never gave the trial court an opportunity to consider admissibility under Rule
806.  Accordingly, he may not now
complain on appeal that the trial court erred in excluding evidence of Lewis’s
convictions or criminal history.  See Martinez, 91 S.W. 3d at 336
(appellate court usually may not reverse trial court’s evidentiary ruling on
theory of admissibility or inadmissibility not raised at trial); Kuecker v. State, No. 01-07-00016-CR,
2008 WL 1747692, 
at *4 (Tex. App.—Houston
[1st Dist.] Apr. 17, 2008, no pet.) (mem. op., not designated for publication) (appellant who failed to
argue admissibility of evidence under Rule 806 waived argument of admissibility
on that ground).  We conclude Hill failed
to preserve this claim for review, and we thus overrule Hill’s second issue.[2]

Conclusion 

          We affirm the judgment of
the trial court. 

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           Although Hill denied living with Lewis at the time
of the incident, during his testimony he explained that Lewis had his debit
card because he had left his cards lying around “the house.”  He then clarified that by “the house” he was
actually referring to Lewis’s home.





[2]        Hill was required
to–but did not–make an offer of
proof or bill of exception, nor did he offer evidence demonstrating that the
“hits” were prior convictions that were, in fact, admissible.  This is an independent basis for concluding
that Hill failed to preserve this complaint for review.  See
Johnson v. State, No. 01-01-00288-CR, 2002 WL 1227209, at *2–3 (Tex. App.—Houston [1st Dist.]
June 6, 2002, pet. struck) (not designated for publication) (citing Hernandez v. State, 976 S.W.2d 753, 755–56 (Tex. App.—Houston [1st Dist.]
1998, pet. ref’d) (when record silent as to date or details of convictions,
appellate court could not review appellant’s claim that trial court erred in
not admitting impeachment evidence of complainant); Kuecker v. State, No. 01-07-00016-CR, 2008 WL 1747692, at *4–5 (Tex. App.—Houston
[1st Dist.] 2008, no pet.) (mem. op., not designated for publication) (citing Davis v. State, 791 S.W.2d 308, 310
(Tex. App.—Corpus Christi 1990, pet ref’d) (trial court did not err in
excluding impeachment evidence of non-testifying hearsay declarant when
background check printout was only evidence of criminal history and proponent
failed to link hearsay declarant to record).